DAVID VAN SCHAICK, Executor of GEORGE VAN SANTVOORD, deceased, Respondent, *v.* THE HUDSON RIVER RAILROAD COMPANY, Appellant.

The plaintiff's testator, residing at S., and desirous of coming to A. by the defendant's railroad, took passage on a caboose attached to a freight train, and not intended for passengers.   The caboose was left at a "round house," a quarter of a mile distant from the depot.   The testator had traveled by this train before, knew that the caboose was not taken to the depot, and was entirely familiar with the locality.   After leaving the caboose, he walked on the main track, upon which his view was clear and unobstructed both ways, toward the depot.   During the walk, his companion, desiring him to wait for him a moment, the testator assented, and while so waiting, stepped behind several empty cars standing on the next parallel track, on a sudden personal necessity.   While there, standing between the rails of the track, a train, backing down on that track, struck the other end of these empty cars, propelled them upon and over him, injuring him so seriously that he died in a few minutes.—*Held*, that these facts showed negligence, as matter of law, on his part, precluding his

representative from recovering for his death, and that it was erroneous to have refused to nonsuit on that ground.

(Argued January 25, and decided January 30, 1871.)

APPEAL from a judgment of the General Term of the Supreme Court in Third judicial department, affirming a judgment entered upon the verdict of a jury.

The cause was tried at the Rensselaer circuit, in June, 1869. Plaintiff obtained a verdict for $5,000, upon which judgment was entered and affirmed at General Term.

Defendant moved for a nonsuit at the close of plaintiff's case, and also at the conclusion of the proofs.

The plaintiff sued to recover damages, because of the death of George Van Santvoord, alleged to have been caused by the negligence of defendant, on the 6th day of March, 1863. Mr. Van Santvoord was a resident of Schodack, Rensselaer county, conducting his profession at the city of Troy, and superintending at the city of Albany the publication of various legal and literary works, of which he was author. At about nine o'clock in the morning of March 6th, 1863, he left his home for Albany, taking passage on board the defendant's cars at Schodack landing, the place of his residence. The distance to Albany was eleven miles. The train he entered was for through freight, without passenger cars, but with a "caboose" in rear, for the accommodation of the employes on the train. Mr. Van Santvoord had previously traveled from Schodack to Albany on this train; and was in the habit of passing between those stations upon this road. The train upon which Mr. Van Santvoord rode upon this occasion, was not accustomed to run to the depot on the "island," opposite the city of Albany. The "caboose" was detached from the train in the immediate vicinity of the "round-house," located some 1,800 feet south of the point where the accident happened, at which point the "caboose" was uniformly left. The defendant occupies a large area of ground in that neighborhood, for the accommodation of its shops and freighting trains. There are seven or eight tracks, used for the deposit of empty

cars, and the making up of freight trains, the east tracks being commonly used for empty cars.

At the time Mr. Van Santvoord took passage, he was informed that the train did not go to the "island," where the depot then was. On arriving at the "round-house," the "caboose" was detached, the train passing on north, for the purpose of switching off upon the east track, as it was accustomed to do. The passengers, including Mr. Van Santvoord, left the "caboose" at the round-house, and walked northerly, on the up main track, toward Albany. One of his companions then asked Mr. Van Santvoord, if he was going upon the "island," and upon his answering affirmatively, asked him to wait a moment, and he would accompany him. This friend passed into a car, returned immediately, and was told of the accident. At this time, there were two or three empty cars, standing alone on the track next east of the up main track, beneath the most southern one of which Mr. Van Santvoord was found injured. It appeared that while waiting for his friend, he moved (from personal necessity) behind the empty cars standing on the east track. While immediately behind the car, and between the rails, the train backed down upon this east track, to leave its empty cars, and striking those behind which Mr. Van Santvoord was, drove them over his body. The train backed down on the east track at a speed of about six or eight miles an hour. One witness testified that he heard no bell rung, or whistle blown, nor saw any lookout stationed on the top of the train. It was undisputed that from the up main track, over which Mr. Van Santvoord was passing, there was no difficulty in seeing the movement of the backing train.

It further appeared that the "caboose" was cut off, opposite what is called "Drum's crossing," near the "round-house." From this point is a street with a plank-walk leading to the lower ferry to Albany.

*William A. Beach,* for the appellant.

*Roswell A. Parmenter* and *Amasa J. Parker,* for the respondent.

Folger, J.    The questions in this case arise upon the defendant's motion to nonsuit the plaintiff and dismiss the complaint.    These questions are, was the defendant guilty of negligence, which caused the death of the plaintiff's testator? Was the plaintiff's testator guilty of negligence, which contributed to his death?

It seems clear to us, from the undisputed facts, that the latter query should have been solved in the affirmative.    And there being no dispute as to the evidence which in our view is controlling, the question was not one of fact for the jury, but of law for the court; and the learned justice who held the circuit erred in refusing the nonsuit and to dismiss the complaint.

Here was a person of mature years, of acute and trained mental faculties, of large experience and acquaintance with the ways of travel, and the localities over which he was then passing.    He had a knowledge, got by use, of the very method and way in which he was then seeking his destination.    He was taken up, he was carried, he was set down, just as and where he had before been.    He started to walk north, as he had been used to do, upon the up main track, along which, cars moving southwardly toward him, could easily be seen approaching.    To walk up this track was to him, as well as to others, a customary way of passage on foot, from the round-house to the ferry.    The main track was, to his observation, the safe and usual track on which to walk. The side tracks were not for that purpose, but for the deposit of cars, and for the backing upon of trains for the uncoupling and deposit of cars.    But at the request of an acquaintance, instead of passing along over and off the main track, and so beyond danger from matter moving upon any of the tracks, he tarried.    And then of his own volition, for his own purpose, without the need put upon him by any act or arrangement of the defendant, he stepped from off the main track, which was clear and safe, upon this side track, and there placed himself between the rails behind cars, there standing, and there he stopped and stood, where he could

neither be seen from the north nor could himself see toward the north. While there, engaged in an act of necessity, doubtless, but a necessity of his own, the train in which he had been a passenger backed down, struck against the cars behind which he was standing, put them in motion, pushed them against and over his body, and killed him. The action of the train in backing down was to switch off and disconnect cars which were to be left from it. It was its customary and proper action on its arrival there. The track on which he stood was used for that purpose, and long had been; being one of a great number thus used, lying in contiguity. It was in no sense a foot-way for travel or a place of stoppage for passengers arriving by that or other trains. It was neither necessary or customary for that purpose. To place himself upon it as he did, he was obliged to tarry on the road way, and to leave the track on which passengers usually and before that passed from the caboose to the ferry. The bare statement of these facts carries with it the conclusion that the testator, from preoccupation of mind and inattention to circumstances, carelessly placed himself where harm might come to him.

Doubtless the deceased, while on the train, was a passenger in the care of the defendant. And after he left the train, still so far a passenger, as that the defendant was bound to provide him egress from their premises, safe for him to use. But he was a passenger, under such relations and circumstances as were not strange and unaccustomed to him. The facts of the case show, that had he continued in the way of egress provided for, and before that, made known to him, he would have come off in safety. He had before ridden from Schodack in the caboose, and it had before been cut off near the round-house, and he obliged to make his way on foot from that point to the ferry. And though more inconvenient to him, than a trip by passenger train, it was still less inconvenient than not to come at all, and was, as he said, an accommodation. It appeared from the testimony, that not always could he obtain a passage in the caboose of the freight train from

Schodack to the round-house, and that on this day it was especially sought for by him.  He took passage, with knowledge of all the incidents of that way of passage.  Can it then be said, that the contract of the defendant with him was any more than to take him up at Schodack, to bear him to the round-house, to set him down there, and to find him clear foot-way up the main track, and off it to the ferry, as they had heretofore done.  There is no proof of any ticket sold and delivered to him, so that the contract is to be deduced from the facts as they all appear.  Had he followed, and adhered to the course of travel, which they had before that afforded to him, and which he knew beforehand he must take, for aught that appears, no injury would have befallen him.  For this train, to those who had used to take it, the round-house was the end of transportation.  The dealings between the testator and defendant, had been such as to come to this, that the defendant had made known to him, that this train was not run especially for the conveyance of passengers, but that to accommodate them, they would on payment of fare, be taken into the caboose of the employes, and in it carried to the round-house, where the caboose would stop; and from whence they must go on foot, over the open and unobstructed main track; and that he had for this accommodation to him, paid his fare, to alight when the caboose stopped, and to finish the way on foot.  It is not the ordinary case of one seeking passage to a given place, and paying fare to it, being with no previous intimation put upon a train which goes not to it.  Neither is it the case, on which the manuscript opinion of the Commission of Appeals has been furnished to us, of one, who though knowing that he is to take a freight train, for his paid for passage from one place to another, is compelled for the first time in his experience, to seek the train at a distance from the station, and in the way there, stumbles into pitfalls unknown to him, and of which he has had no warning.  There, in ignorance on the part of the passenger of the existence of any peculiar circumstances, the contract is to carry safely, and to afford safe way of access to

the vehicle. If in that case, it had been said to the passenger, to go at this time, you must go by a freight train, not on purpose for passengers; it stands yonder; you must go to it to get on board; on the way to it there is a place dug out, over which you must pass; if, under these circumstances you choose, your fare will be taken and a ticket sold to you; and he had paid and gone; it would have needed to have rendered the carrier liable, that more should have been shown, than merely that the passenger had fallen into the pit and had been hurt.

The argument of the learned counsel for the respondent seems to exclude the idea that the testator was in a way familiar to him, and that he was pursuing a mode of reaching Albany, as to which, from use, he knew all. It is one too important to be dropped from the consideration of the case. He knew where he was to be set down. He knew the track he was to follow from there to the ferry. He was in familiar surroundings. Despite this, he stopped; he left the main track, where passage was usual and safe, and range of vision unobstructed; he stepped between the rails of a side track, just in the rear of cars subject to be disturbed, and there he stopped and stood.

Does it not seem clear that this was not ordinary care of self? It seems to us a self-evident proposition, that no prudent man would deliberately take this stand between the rails of a railroad track, out of view, close to and behind a car, when three feet therefrom was a clear way, upon which he could see and be seen afar.

It comes to this, then, that the plaintiff's testator was a negligent contributor to the injury he suffered; or that the exercise of the ordinary care of a prudent man is excused, for that nature was so urgent that her demands were paramount. But if nature was urgent, it was an urgency which was upon him alone, and which he had no right, in his duty to others, to permit to overcome his care for himself. And it can be no excuse for the lack of prudence that the pressure of a private necessity, or the sense of delicacy in its relief, was stronger

than his care for his own person. Certainly the disastrous results of so yielding to that pressure and that sense as to forget and to neglect that care, should not be visited upon those who were not instrumental in producing the necessity, and knew not of it.

The judgment of the court below should be reversed, and a new trial granted, with costs to abide the event.

All concurring.

Judgment reversed, and new trial ordered.

PECKHAM, J., did not sit.