THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COM-
PANY v. JAMES SMITH, *by his next friend, William Smith.*

1. CASE, *Followed.* The case of *Smith v. The Atchison, Topeka & Santa Fé
Railroad Company,* 25 Kas.738, referred to, and followed.

2. FACTS, *Not Constituting Culpable Negligence per se.* The Atchison, Topeka
& Santa Fé railroad company owned a side track, about 450 feet in
length, situated wholly upon its own right of way, and partially within
and partially outside of the corporate limits of Osage City, Osage
county, Kansas, and near several dwelling houses. It was not inclosed
by any fence, and children occasionally played upon it. A coal shaft
was situated by the side of it, about 300 feet from where it connected
with the main track; and from the coal shaft toward the main track it
descended to a point within about seventy-five feet from the main track,
and then ascended to the main track; so that cars loaded at the coal
shaft would descend of their own weight to the lowest point, or beyond
it, but would finally settle at that point. One car was loaded at the coal
shaft, and was allowed to run down the side track to the lowest point,
where it settled and remained. Afterward another car was loaded and
allowed to run down against the standing car, and in so doing the plain-
tiff, who was on the track, and who was a child two years and twenty
days old, was run over and injured. Whether the employés at the coal
shaft looked to see whether the track was clear, before permitting the
second car to run down the side track, is a disputed question of fact; also
whether they could have seen the plaintiff if they had so looked, is like-
wise a disputed question of fact; and whether the plaintiff was under
or behind the first car, and was run over by the first car as well as by
the second, is also a disputed question of fact. But supposing that the
employés at the coal shaft did not look before permitting the second car
to move, and supposing that they could not have seen the plaintiff if
they had so looked, then, *held,* that the acts and omissions of the em-
ployés at the coal shaft did not constitute culpable negligence *per se,* for
which the court could, as a matter of law, declare the railroad company
to be responsible. While the failure of the employés to look to see that
the track was clear, (provided they did so fail to look,) may be called
negligence, yet, under the circumstances above supposed, such failure
to look did not cause the injury complained of, nor contribute thereto,
and therefore cannot be called culpable negligence so as to make the
railroad company responsible in this case.

3. SPECIAL INSTRUCTIONS, *Error in Refusing; Theory of Jury; New Trial.*
The defendant, the Atchison, Topeka & Santa Fé railroad company,
submitted certain instructions to the trial court, and requested the court
to give them to the jury, which instructions were asked for for the pur-

pose of having the jury determine what the relative situation of the plaintiff was with respect to the standing car, and whether the plaintiff was in such a situation that he could have been seen by the employés at the coal shaft; and the court refused to give them: *Held*, Error. It also appears from the special findings of the jury that the jury did not know what the relative situation of the plaintiff was with respect to the standing car, or whether the standing car was pushed over him, or not, but seemed to decide the case upon the theory that if the employés at the coal shaft failed to look to see that the track was clear before they permitted the second car to move, that the railroad company must necessarily be responsible, whether the failure to look caused or contributed to the injury or not. *Held*, That for the above errors, and under the circumstances above mentioned, the defendant is entitled to a new trial.

### *Error from Osage District Court.*

ACTION brought by *James Smith*, an infant, by his next friend, William Smith, against the *Railroad Company*, to recover damages for personal injuries. Trial at the October Term, 1881, of the district court, and verdict for the plaintiff for $5,000 damages. New trial refused, and judgment on the verdict for the plaintiff. The defendant brings the case to this court. The facts appear in *Smith v. A. T. & S. F. Rld. Co.*, 25 Kas. 738, *et seq.*, and in the opinion, *infra*.

*Geo. R. Peck*, and *A. A. Hurd*, for plaintiff in error:

1. There is manifest error in the instructions given by the court in relation to the questions of comparative negligence, in this, that the court instructs the jury that if they find that the injuries were caused by the *slight* negligence of the child's parents, and the *gross* negligence of the servants of the defendant, that the plaintiff is entitled to recover, but does not give any instructions as to what constitutes *slight* or *gross* negligence, thus leaving the jury to depend upon their own resources to determine a question of law.

2. The court below erred in refusing the first instruction asked by defendant, to wit:

"I instruct you that if the accident happened on defendant's track at a place where there was no public crossing, and not at a station, then the plaintiff was a trespasser, and

the defendant was under no obligation to exercise any extraordinary means to ascertain whether said plaintiff was in such place of danger or not."

The case was tried, and the verdict rendered, upon the theory that it was the duty of the railroad company, before moving its cars, to send some one to look under and behind them, for the purpose of seeing if some person might possibly be in a place of danger; and there is nothing in the instructions *given* by the court throwing any light upon the proposition of law stated in this instruction, asked by the defendant, which should have been given, for if the instruction *had* been given, and the jury had paid any attention to it, under the evidence, the verdict must have been for defendant. We think there can be no question as to the correctness of the law as stated in the instruction asked, and it certainly was applicable to the case at bar. (44 Pa. St. 375; 81 id. 366; 24 id. 465; 46 id. 493; 64 Mo. 22; 65 id. 22; 95 U. S. 697; 20 Ill. 478; 87 id. 529; 71 id. 500; 47 id. 265; 59 Ind. 89; 53 id. 310; 47 id. 43; 13 Minn. 30; 21 id. 293; 11 Hun, 333; 100 Mass. 208. See also 2 Eng. & Am. Rly. Cases, part 1, p. 4.)

3. The court below erred in refusing the second instruction asked by the defendant, to wit:

"If you find that the accident happened by the plaintiff going upon the track of defendant, at a place where there was no public crossing, and was there playing upon defendant's track, under a loaded car standing upon the track, and the injury occurred by another loaded car being permitted to descend by its own weight down the track, and strike against and move the car under which the child was playing, and the defendant's employés did not know said child was under the car, and could not, from the place they were working, have seen the child where it was, without going to said car and looking around it or under it for that purpose, or without going a great distance from their work to look around said car, then I instruct you that the plaintiff cannot recover, and you must find for the defendant."

This instruction is good law, applicable to the facts, and in

direct harmony with the decision of this court when this case was before it. (*A. T. & S. F. Rld. Co. v. Smith*, 25 Kas. 738.)

4. The court below erred in refusing the third instruction asked by defendant, to wit:

"I instruct you that unless there was a public crossing at the place where the child was injured, that the defendant and its servants had a right to presume, without making any examination of the cars standing on the track, that there was no one on the track or under the standing car, and that the servants of the railroad company were under no obligation to go around said standing cars or to look under them, to ascertain whether a child was there or not, and as long as such child was not visible from where the men were working at the coal shaft, they were not under any obligation to go to said standing cars upon letting the loaded car at the coal shaft run down to the standing cars."

This instruction is also in harmony with the opinion in *A. T. & S. F. Rld. Co. v. Smith*, supra, and should have been given.

5. The court below erred in refusing the fourth instruction asked by defendant, to wit:

"I instruct you that the defendant was not under any obligation to fence its side track at the place where the child was hurt, so as to prevent a child of its age from getting upon the track." (4 Robt. 204; 43 N. Y. 527.)

6. The court below erred in refusing the fifth instruction asked by defendant, to wit:

"I instruct you that if the mother of the child permitted it to go into the kitchen of the house, about ninety feet from the place where the accident happened, knowing that the kitchen door was open, and that there was nothing to prevent it from going on the railroad track, and that cars loaded with coal were liable at any time to be permitted to run down from the coal shaft to the cars standing in front of the house, and made no effort to prevent said child from going upon the track, then she was guilty of such negligence as will prevent the plaintiff from recovering in this case, unless it is shown that the men moving the cars could have prevented the accident by the exercise of reasonable care after they knew of the child's danger." (Sherman & Redf. on

Neg., § 48; 21 Wend. 615; 9 Allen, 401; 1 E. D. Smith, 74; 36 Barb. 230; 2 Eng. & Am. Rly. Cases, 4.)

7. The court below erred in refusing the sixth instruction asked by the defendant, to wit:

"If the men in charge of the coal shaft could not have seen the child on the track under or at the end of the car from where they were engaged in their work, then I instruct you that the defendant was not guilty of any negligence, and you must find a verdict for the defendant." (43 N. Y. 527; 23 Kas. 347.)

8. The court below erred in refusing the seventh instruction asked by defendant, to wit:

"It is contributory negligence *per se* for a parent to permit a child two years and twenty days old to stray away from home, upon a railroad track ninety feet from the door, by letting it remain unguarded in a room with the door open, leading directly to such track, with nothing to prevent it going upon said track; and such negligence is chargeable to the child, and will prevent a recovery in this case, whether the parent knew where the child had gone or not, unless the defendant could have prevented the accident by the exercise of ordinary care after it or its servants knew of the child being in a place of danger." (64 Mo. 480; 65 id. 22; 24 Pa. St. 465; 81 id. 366; 28 Ind. 287.)

9. The court below erred in refusing the ninth, tenth and eleventh instructions asked by defendant, to wit:

"*Ninth.* The court instructs the jury that the defendant in this case had no duty to perform to or toward a child wandering upon its right of way or track, not at a station, public crossing, or other public place, and of which it has no knowledge, except that it shall not willfully injure such child.

"*Tenth.* The court instructs the jury that the defendant has no duty imposed on it to watch out for or to guard and protect any person voluntarily coming upon its track, whether child or adult, at a place not a station, public crossing, or other public place, except that the defendant shall not willfully injure such person, and it cannot be charged with such willful conduct until it has been brought to the knowledge of the defendant or its servants that such person is upon the track, and until such knowledge is had by the defendant or its servants, it has the right to transact its business as

35 — 28 KAS.

if no person were then upon its tracks, right of way, or under its cars.

"*Eleventh.* The defendant has the right to move its cars standing upon its tracks and in its yards, without sending a person to look to ascertain whether or not there are persons under such cars before such cars are moved."

The above instructions properly set forth the law applicable to the facts proven at the trial, and as refused on the part of the court below to so instruct the jury, was error prejudicial to the rights of the defendant; for had such instructions been given and heeded, the verdict must have been for the defendant.

10. The court below erred in refusing the fourteenth, fifteenth, sixteenth, seventeenth and eighteenth instructions asked by defendant, to wit:

"*Fourteenth.* The court instructs the jury that the law does not presume that the child was injured by the negligence of the defendant, but the same must be proved by a preponderance of testimony, the same as any other material fact in the case.

"*Fifteenth.* The fact that the accident occurred to the child is of itself no proof or presumption of negligence on the part of the defendant, but the same must be proved by a preponderance of testimony before the plaintiff can recover.

"*Sixteenth.* There is no presumption of law that the child could have been seen by Black or Williams at the time it was hurt, and just prior to the car at the shaft being loosened by Black; and unless the plaintiff has shown by evidence introduced on the stand in your presence that the child was in such a position just prior to the car being loosened by Black, that it could have been seen from the position then occupied by either Black or Williams, then I instruct you that the plaintiff cannot recover anything in this case unless the evidence shows conclusively that at the time Black loosened said car, or immediately prior thereto, either Black or Williams had actual knowledge of the dangerous position of such child.

"*Seventeenth.* Before the plaintiff can recover in this case he must show by a preponderance of testimony, that the position of the child just prior to the time of the accident, and at the time the car was loosened and sent down, was such that it could have been seen by Williams or Black, had they or either of them looked to see; or in lieu of this, the plaintiff

must show by a preponderance of testimony that Williams and Black, or either of them, had knowledge that the child was then in a position of danger.

"*Eighteenth.* You are not to infer or presume that at the time the car was loosened and sent down that the child could be seen by either Williams or Black, nor are you to infer or presume that Williams or Black, or either of them, did not look to see if there was any one in a position of danger at the time the car was about to be loosened and sent down; but each of these facts must be proved by a preponderance of testimony, or the plaintiff cannot recover."

The above instructions are so clearly in accordance with the law, in the light of the decisions already referred to, that we deem it unnecessary to refer to anything additional. There can be no question but that they would have materially assisted the jury in applying the law to the facts of the case at bar.

11. The court below erred in refusing the nineteenth, twentieth, twenty-first and twenty-second instructions asked by defendant, to wit:

"*Nineteenth.* The court instructs the jury that the presumption of law in the case is, that the defendant was not guilty of negligence, and it must be proved by a preponderance of testimony before the plaintiff can recover in this action.

"*Twentieth.* The court instructs the jury that the presumption of law applicable to this case is, that Williams and Black each did his duty, that they looked to see whether anyone was in a position of danger, and that the car was only loosened after they had so looked and had failed to discover anyone in a position of danger; and all these presumptions must be overcome by testimony before the plaintiff can recover in this case.

"*Twenty-first.* The court instructs you that the defendant had a perfect right to permit Williams and Black to load cars at the coal shaft of the coal company for which they were then working, and permit such cars when loaded to run down the switch track of their own gravity, to a point about opposite the house of plaintiff, without going to a standing car which had previously been loaded and run down to that point, for the purpose of seeing whether any person might be under or near said standing car in a place of danger; and that it was no part of the duty of Williams or Black to go to such standing car, or to go away from their post of duty or place of employment, to

ascertain whether or not the plaintiff's child, or any other person, might be under or near the standing car, in a place of danger.

"*Twenty-second.* The defendant had the right to move cars on this track as it pleased by its own employés, or through the employés of any other company, without being required to make an inspection of its track or cars before moving its cars, to see whether or not persons had strayed or wandered on its track or under its cars and into a place of danger, and all that anyone would be required to do in the movement of such cars in the absence of any knowledge or belief that anyone was so on the track or under the cars, would be to attend to the movement of such cars in the ordinary and usual manner, without making any inspection or examination, whatever." (24 Pa. St. 465; 20 Ill. 478; 49 Ind. 93; 53 id. 310; 23 Kas. 347; 2 Eng. & Am. Rly. Cases, 4.)

12. The court below erred in refusing the twenty-third instruction asked by the defendant, to wit:

"The court instructs the jury that if you find from the evidence that J. B. Williams was in charge of the coal shaft of the Carbon coal and mining company, and the cars being loaded from such shaft on defendant's side track, and that Christ. Black was under the direction of said Williams in the performance of his duties to said coal company, and at the time Williams and Black went down from such coal shaft over such loaded car, Williams then looked to see if he could discover any person or child on said side track or near the car standing in front of plaintiff's house, in a place of danger, and could not discover anyone, then it was entirely immaterial whether Black looked or not, and the plaintiff cannot recover any judgment in this case unless you find from the evidence that at the time such car was loosened at the shaft by Black, either Black or Williams had actual knowledge of the dangerous position of such child."

This instruction should have been given; but in view of the fact that the jury, in answering the nineteenth finding of fact asked by defendant, entirely disregarded the evidence, it is probable that this error was not prejudicial to the defendant's rights, at least so far as that jury was concerned.

The burden of showing negligence is upon the plaintiff; and until that is shown, either by showing that the child was

*where* it could have been seen by Williams, or that Williams *did not look before* permitting the car to be started, how is it claimed that negligence has been shown? No one saw the child; no one knows *where* it was playing; circumstances show that it was behind the wheels of the standing car, where it could not have been seen from the coal shaft, or without going to the car and looking behind it; and Williams, an unimpeached and uncontradicted witness, swears positively that he did look *for* the purpose of seeing if any person was in a place of danger, and *did not and could not see the child;* and yet the jury, in their answer (if it is their answer) to question 19, say, "We think not."

Under these circumstances and this evidence, it was the duty of the court below to *at least* give the defendant a new trial.

*Vandeventer & Martin,* and *Ellis Lewis,* for defendant in error:

The instructions of the court below were fair, clear and correct. There was not an incorrect statement nor proposition certainly prejudicial to defendant below. Where the court instructs the jury that if they find that the parents of the plaintiff were guilty of negligence in their care of the plaintiff, and that such negligence materially contributed to the injury complained of, that plaintiff could not recover, the plaintiff below might have correctly objected thereto. (17 Wall. 657; Shearman & Redf. on Neg., § 39, and authorities in note 2.) But there is nothing plaintiff in error can or ought to criticise. There were instructions applicable to every issue in the case. They were full and complete enough to apply all the law applicable to all the facts in evidence, and the court below committed no error in not defining the words slight, ordinary, and extraordinary. The jury are presumed to understand the English language, and the court ought not, as it did not, attempt to tell the jury as a matter of law what constitutes ordinary diligence, or ordinary negligence, in this case. (17 Kas. 37; 17 Wall. 657; 40 Mo. 151; 34 id. 461.) The facts were all disputed, and besides, different

minds might have drawn different conclusions from any portion of them relative to the question of negligence of the railroad company.

As to the instructions asked by plaintiff in error, all that was pertinent and proper in them as abstract propositions of law had been included in the instructions given by the court to the jury in its general charge. As to what was not thus included, they constitute a request to the court to take the case away from the jury, and make the court the arbiter of questions properly submitted to the jury. (28 Wis. 488, 492–3.) As to the question of the character of the case required of plaintiff in error, in this particular case, which is referred to in all the instructions asked by plaintiff in error, we call the attention of the court to the following:

"Moreover, upon the principle already stated, that ordinary care means the degree of care taken by men of ordinary sense and discretion to avoid injury to their own interests, it being plain that such men would, where their own lives are at risk, use a decree of care which in respect to anything else would be considered very great, it follows that a like degree of care in respect to the lives of others is required from all men who, under similar circumstances but with mere property interests at stake, would be bound to use ordinary care." (28 Wis. 498; 102 Mass. 401. See also 23 Kas. 358; 5 Mo. App. 435; 49 Wis. 529.)

The first instruction asked by plaintiff in error does not state the law. (23 Kas. 358; 28 Wis. 492–501; 23 id. 186, and cases cited; 102 Mass. 401; 5 Mo. App. 435; 27 Gratt. 455; 56 Mo. 351; 34 Iowa, 461.) In 44 Pa. St. 375, cited by plaintiff in error, the conductor walked along and examined the length of between fifty and seventy cars. Certainly no deduction from that case can be drawn against defendant in error in this. The abstract propositions of law pertinent to this case had already been given in the general charge by the court, and this first instruction could only have tended to confuse the jury. The general propositions of law in reference to negligence set forth in 44 Pa. St. 375, 20 Ill. 478, and other cases cited by counsel for plaintiff in error, hold the law to be as given by the court.

As to the second instruction complained of, the theory of said instruction is, that the employés Black and Williams could not possibly have seen the child where it was without going to this front car, about 150 feet north of them, and looking around it or under it for that purpose. Now if it was impossible to acquire the necessary information without doing this, did not ordinary care require that they should take just such pains as was necessary to enable them to provide against injury to life? (102 Mass. 401; 28 Wis. 492, 493.) The evidence in this case, however, does not show that it was necessary for them to have gone any further than the north end of the car which they were about to start. (22 Kas. 686–690; 25 id. 744; 17 Iowa, 380–384.)

As to the third instruction asked by plaintiff in error (and refused), see 23 Kas. 358; 5 Mo. App. 435. It would at best, if given, only have tended to confusion.

As to the fourth instruction asked, the district court did not instruct that a railroad company was under obligation to fence its side track, but the fact that there was no fence was a part of the description of the location and arrangement of the side track, and was simply a fact that could be considered as a part of the description, and did not prejudice the rights of the defendant. "The proof of the absence of the fence was not the actual basis of any recovery — it was only admitted as an incident or circumstance to establish the degree of negligence." (25 Kas. 409.) As to the necessity of a fence, see 23 Wis. 186. The record does not show that the absence of the fence was urged to the jury as one of the rights on which the judgment was obtained; but even if it had been, and the attorney for defendant in error had gone beyond the record, no complaint has ever been raised before.

The fifth instruction is in violation of the law laid down in the former opinion of the court in this case. (25 Kas. 742; and see Shearman & Redfield on Negligence, § 39, note 2, and authorities therein cited.)

The sixth and seventh instructions were properly refused. They would, like several others asked, have determined the

question of negligence of plaintiff in error. This was the province of the jury. (17 Wall. 657.)

The ninth, tenth and eleventh instructions are but reiterations of what had been already refused, and were even worse than those already asked, and all that was proper in them had been given by the court. (5 Mo. App. 435; 23 Kas. 358.)

Both the fourteenth and fifteenth instructions were given in substance by the court.

The sixteenth instruction certainly asks too much. If the child had gone upon the track after the car had started and no one on it to control it, then Black and Williams could have stood still and watched the child killed, and no one under this instruction would have been liable. (25 Kas. 744.)

In the seventeenth instruction the learned counsel are again at sea. The question was not, Did plaintiff in error have knowledge of the whereabouts of the child? but, Could it have known of its position of danger by the exercise of ordinary care and diligence?

The eighteenth and nineteenth instructions were given in substance by the court.

The twentieth instruction is so gravely at variance with every known principle of law, that it needs no attention. As to twenty-first instruction, see 25 Kas. 738.

The twenty-second instruction is asked regardless of any duties which are by law imposed upon a railroad company. The court is asked to tell the jury that all the railroad company is required to do is simply to conduct its business in the usual and ordinary manner, and it necessarily follows that if it is the custom to kill a man every day, it would make no difference to the facts or principles of the case. The court has already said: "To allow cars to be run in such a manner, under similar circumstances — similar to those surrounding the present case—would often result in injury to individuals; and to run cars in such a manner, under such circumstances, shows a wanton disregard for the safety of others." (25 Kas. 744.)

As to twenty-third instruction, it simply attempts to take

the consideration of the case from the jury, and asks the court to determine, as a matter of law, what the plaintiff in error ought to have done. Under the circumstances of this particular case, in the use of ordinary care, the authorities heretofore cited all hold that the question of whether plaintiff in error did use ordinary care, under the circumstances of the case, should be left to the jury to determine from all the evidence.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by James Smith, an infant, by his next friend, William Smith, against the Atchison, Topeka & Santa Fé railroad company, for damages alleged to have been caused by the negligence of the railroad company. The action was tried before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendant for the sum of $5,000 and costs. The defendant, as plaintiff in error, now brings the case to this court, and asks for a reversal of such judgment.

With regard to many of the facts of the case, there is no dispute; but with regard to others, the parties do not agree. Among the undisputed facts we would mention the following:

The plaintiff below (defendant in error), at the time he received the injuries complained of, was a child two years and twenty days old. The defendant below (plaintiff in error) was at that time and still is a railroad corporation, and was engaged in the operation of a railroad through Osage City, Osage county, Kansas. It had constructed upon its right of way, partially outside and partially inside of the corporate limits of Osage City, a switch or spur track, for the accommodation of itself and the Carbon coal and mining company in loading corn, coal, and other articles of commerce upon the cars of the railroad company for shipment over the company's railroad. This side track was wholly on the right of way of the railroad company, and ran in nearly a northerly and southerly direction, connecting with the main track at the northern end of the side track — the side track being so

*Statement of facts.*

constructed that cars would, of their own weight, descend from the southern end of the track to a point about seventy-five feet from the connection with the main track, from which place there was an ascending grade to the point of connection, which would generally prevent the cars from running out upon the main track, though sometimes they would in fact run out upon the main track. The shaft and coal chute of the Carbon coal and mining company were situated by the side of this side track, about one hundred and fifty feet north of the south end thereof—the side track being about four hundred and fifty feet long from one end to the other. This side track was used by the railroad company, among other purposes, for pushing in empty coal cars to be loaded by the coal company — these empty cars being placed at the south or highest end of the side track; then, as the coal company was ready to use the cars, the brakes would be loosened, and the car of its own weight would run down opposite the coal chute, where it would be fastened by setting the brakes, or by placing a piece of wood or coal under one of the wheels; and when loaded, the car would be permitted to descend to a point about seventy-five feet from the connection of the main track, where it would usually stop, that being the lowest point of the side track; and as other cars were loaded, they in like manner would be permitted to run down the side track and strike against the loaded cars previously permitted to so run down.

The parents of the plaintiff lived in a small house of two rooms, about ninety feet east of, and nearly opposite, the lowest portion of this side track, the door of the kitchen of the house opening toward the track. Neither the right of way of the railroad company nor the house was inclosed by any fence, and the ground between the house and track was level, and no obstruction intervened to prevent a child from going from the house to the side track, if left unattended. At the time of the accident the child's parents had been living at that place for about three years, during the whole of which time cars were being handled by the coal company, as above described; and the manner in which cars were loaded and

run down the side track was well known to the child's parents. At the time of the accident the father of the child was at work for the coal company, in the coal shaft at which the cars were being loaded. The mother was inside of the house, "picking raisins" and talking to a neighbor, in the principal or east room of the house. Just prior to the accident the mother gave the child some raisins and it went into the kitchen, she knowing that the kitchen door was open toward the track, and that there was nothing to prevent the child from going upon the track. After the child had been out of the east room about four or five minutes, the mother heard the car running down the side track, and got up and went to the door to see what had become of the child, and hearing it cry went out and found it under one of the cars, it having sustained the injuries complained of. *No person* saw the child from the time it left the east room of the house until after the accident. One car had been loaded and run down to a point opposite plaintiff's house before the accident occurred; and the injuries were caused by permitting a second car to run down near the same point. The second car ran partially over the child—the front wheels on the east side running over the child's right arm and left hand, and crushing them. Whether the first car was pushed over the child, previous to the second car running over it, is a disputed question of fact. At the time the accident occurred no servant, agent or employé of the plaintiff in error was in sight, the only persons in sight being J. B. Williams, the foreman in charge of the coal shaft, and his assistant, Christ. Black, employés and servants of the coal company, over whom the railroad company had no control. At the time that the second car was loaded, Williams and Black were on top of what they call the "dump." In other words, they were on top of the platform at the top of the coal shaft, where coal is "dumped" into a chute which conducts it to a car, for the purpose of loading the car. When the car was loaded in the present case—the second car—Williams and Black came down from the "dump" and upon the top of the car; and Wil-

liams then went down over the south end of the car for the purpose of getting another empty car; and Black went to the wheels at the southeast corner of the car and removed the obstructions from the wheels, thereby permitting the car to start; and the car ran down the grade of the side track as before stated, and caused the injuries complained of. Prior to permitting this car to move, neither Williams nor Black went down to the standing car to look under it or behind it to see whether any person was in danger, or not; nor did either of them stoop down so as to look under the car; nor did either of them move to one side or the other, so as to look behind it. If the child had been at any point between the standing car and the second car, it would have been in plain view from the coal shaft and from the second car.

The only disputed questions of fact are the following:

1. Was the child between the standing car and the second car, or was he north of the standing car or under it, so that he could not have been seen from the coal shaft or from the second car?

2. Did Williams or Black, or either of them, look down the side track toward the standing car, for the purpose of seeing whether the track was clear or not, before they loosened the second car?

The plaintiff in error (defendant below) claims that the child was north of the first car, or under it, so that it could not have been seen from the second car or from the coal shaft, and that the second car when it ran down the side track, struck the first car and caused it, as well as the front wheels of the second car, to run over the child and injure it; while the defendant in error (plaintiff below) claims that the child was not run over by the first car, but only by the second car.

The plaintiff in error (defendant below) also claims that both Williams and Black, and certainly Williams, looked down the side track toward the standing car, for the purpose of seeing whether the track was clear or not, before Black loosened the second car, and that at that time the track was entirely clear; while the defendant in error (plaintiff be-

low) claims that neither Williams nor Black looked down the side track at that time.

Nearly all the questions of law involved in this case have already been decided by this court; for this is the second time that the case has been to this court. (*Smith v. Atchison, Topeka & Santa Fé Railroad Company,* 25 Kas. 738.) It has virtually already been decided by this court that the child was too young to be held responsible for any contributory negligence of its own. It has also been held by this court that the question whether the parents, under the circumstances of this case, were guilty of contributory negligence or not, was a question of fact, which should be submitted to the jury, and could not be determined one way or the other as a question of law by the court. It has also been determined by this court, that if neither Williams nor Black looked down the side track for the purpose of seeing whether the track was clear or not, before they loosened the second car, and if the plaintiff was at the time in such a situation that he could have been seen by them, if they had looked, then that they were guilty of negligence, (the question however being one of fact for the jury,) for which negligence the railroad company should be held responsible. The facts with reference to these questions appear at this time to be substantially the same as they appeared to be then; and hence it is not necessary to restate the facts specially with reference to these particular questions, but only to say that we reaffirm the decision of all the questions which were decided by us when the case was here before, and that we shall now consider specially only such questions as are new.

The only questions of law or fact now to be considered or to be decided are the following:

1. Did Williams or Black, before Black loosened the second car, look down the side track, toward the standing car, to see whether the track was clear or not?

2. Was the plaintiff in such a situation that he could have been seen if Williams or Black had looked down the side track for the purpose of seeing whether the track was clear or not?

Or was was he north of or under the standing car, so that he could not have been seen from the coal shaft or from the second car?

3. And supposing the plaintiff to have been north of or under the standing car, and in such a situation that he could not have been seen by either Williams or Black from the coal shaft or from the second car, then was it negligence to leave such standing car in the condition in which it was left, and in permitting the second car to run down against it with such force as to push it over the plaintiff and injure him as he was injured?

4. And were these questions fairly submitted to the jury?

There is no claim that the court below erred with reference to the admission or exclusion of evidence. It is claimed, however, that the court below erred in giving instructions to the jury; but we do not think that the court below so erred; and even if it did, no proper exception was taken, and hence the error was waived.

It is also claimed that the court below erred in refusing to give instructions to the jury, and in overruling the motion of the defendant for a new trial.

I. The first question above mentioned — that is, whether Williams and Black (before they permitted the second car to move) looked to see whether the track was clear or not—we think was fairly submitted to the jury, and the jury found against the defendant and in favor of the plaintiff thereon. The jury found a general verdict in favor of the plaintiff and against the defendant, which is presumptively a finding in favor of the plaintiff and against the defendant upon all disputed or contested questions of fact. The jury also found specially as follows:

"Q. 19. Did not J. B. Williams, at the time he and Christ. Black came out of the coal shaft over the loaded car, look to the north toward the standing car on the track near plaintiff's house for the purpose of seeing whether there were any children on the track or in a place of danger? A. We think not."

The defendant (plaintiff in error) however claims that this special finding is against all the evidence introduced in the case upon this subject. Williams testified directly and positively that he did look while he was at the coal shaft and just before the second car was loosened, to see whether the track was clear or not, and that it was clear; and there was no evidence contradicting this testimony of Williams except the circumstances of the case. We shall revert to some of these circumstances hereafter.

Under the general verdict of the jury and the evidence, we must consider it as settled that Black did not look to see whether the track was clear or not.

II. The second question above mentioned cannot be answered as the case is now presented to this court. No person saw the child from the time it left its mother's kitchen until after it was injured; and what its situation was with respect to the standing car, no one had any positive knowledge. The weight of the testimony, however, would seem to indicate that the child was at the north end of the standing car, and behind it from where Williams and Black were at work, so that they could not see it. The mother of the child, who was the first person to see it after it left her kitchen and after it was injured, testified that she thought that the standing car ran entirely over it; and the testimony of Williams and Black would clearly indicate the same thing, while some of the circumstances of the case would seem to indicate that only the front wheels of the second car ran over the child. The jury could not answer the question. In answer to the question, "How many wheels passed over the child's arm at the time it was injured?" the jury answered, "We do not know," indicating clearly that even the jury could not tell where the child was before it was injured, or what its situation was with reference to the standing car. As the record furnishes no answer to this second question, we shall have to pass it without giving any answer thereto.

III. But supposing the plaintiff to have been north of or under the standing car, and in such a situation that he could

not have been seen by either Williams or Black from the coal shaft, or from the second car: then was it negligence to leave such standing car in the condition in which it was left, and in permitting the second car to run down against it with such force as to push it over the plaintiff and injure him as he was injured?

This question may be viewed in two different aspects: First, was the question, and is it one of law, to be submitted to the court? or, second, was and is it a question of fact, to be submitted to the jury? And if the question is one. of law, to be submitted to the court, then the question may be subdivided as follows: Did the acts and omissions of Williams and Black constitute culpable negligence *per se*, or were they excusable. acts and omissions, or acts and omissions not constituting any culpable negligence?

The members of this court all agree, that, upon the theory that Williams and Black could not have seen the plaintiff from the coal shaft or from the second car, and had no reason to believe or suppose that he was behind or under the standing car, then that the supposed negligence of Williams and Black was not nor is culpable negligence *per se*, whatever may have been the other facts of the case. The mere failure on the part of Williams and Black to look to see that the track was clear, provided they did so fail to look, could not have constituted culpable negligence *per se*, if their failure to look did not cause or contribute in any manner to the production of the injury to the plaintiff. Whether the supposed negligence of Williams and Black under such circumstances is not culpable negligence at all, or whether the question is one of fact, to be submitted to the jury for their determination, the members of this court have not up to this time been able to agree. But as the case is now presented, we think it is unnecessary that we should agree, or that we should express any opinion upon. the question; for, in whichever way we might view the question, we would still think that the judgment of the court below should be reversed, and the cause remanded for a new trial.

The plaintiff in error, defendant below, claims that the question of negligence which we are now considering is one purely of law; that the supposed negligence of the defendant or the said employés is *per se* not culpable negligence at all, and cites the following, among other cases, upon which it seems specially to rely: *Van Schaik v. H. R. Rld. Co.*, 43 N. Y. 527; *C. B. U. P. Rld. Co. v. Henigh*, 23 Kas. 347; *Lafayette &c. Rld. Co. v. Huffman*, 28 Ind. 287. But these cases would hardly seem to be in point. In the case of *Van Schaik v. H. R. Rld. Co.*, the party injured was a man "of mature years, of acute and trained mental faculties, of large experience, and acquainted with the ways of travel and the localities over which he was then passing;" and in that case the decision was against the plaintiff, on the ground of the contributory negligence of the person injured; while in the present case the person injured is a child of scarcely any understanding, being only two years and twenty days old, and his parents had no knowledge that he was on the railroad track. In the case of *Henigh* case, the car which did the injury was not near a city, but was situated near only a small village of only five or six houses. In that case the car was properly fastened by the employés of the railroad company, and was not afterward put in motion by any person having any connection with the railroad company, but was put in motion by the party injured himself; while in the present case the cars that did the injury were within the vicinity of an incorporated city, in a comparatively populous place, where children occasionally played, and the north car was not fastened at all; and both cars were set in motion by persons for whose acts in this respect the railroad company is responsible. In the case of the *Lafayette &c. Rld. Co. v. Huffman*, 28 Ind. 287, the reasons for the child's being upon the railroad track playing were wholly unexplained, and, from anything appearing in the case, the parents of the child may have known that it was there playing upon the railroad track, and may have been guilty of the grossest contributory negligence; and the case was decided upon this theory.

36 — 28 KAS.

The defendant in error (plaintiff below), in support of his side of the case, cites the case of *K. C. Rld. Co. v. Fitzsimmons,* 22 Kas. 686; but we do not think that that case is applicable to this case. In that case the machinery which did the injury was of that alluring character which would naturally entice boys to play with it and upon it; while in the present case nothing of that kind can be claimed.

As to when the question of negligence must be submitted to the jury as a question of fact, and when it must be decided by the court as a question of law, we would refer to the following cases: *C. B. U. P. Rld. Co. v. Hotham,* 22 Kas. 41, 50–52, and cases there cited; *K. P. Rly. Co. v. Richardson,* 25 Kas. 391. We would also refer to the following authorities as having some reference to this same question and to this particular case: *N. P. Rld. Co. v. Kirk,* 90 Pa. St. 15; same case, 1 Am. & Eng. Rly. Cases, 45, 52, and cases cited; *Frick v. St. L. K. C. & N. Rld. Co.,* 5 Mo. App. 435; *Johnson v. C. & N. W. Rld. Co.,* 49 Wis. 529; same case, 1 Am. & Eng. Rly. Cases, 155; *Cheeney v. N. Y. C. & H. R. Rld. Co.,* 23 S. C. (16 Hun,) 415; *Costello v. Syracuse &c. Rld. Co.,* 55 Barb. 95; *C. B. & Q. Rld. Co. v. Payne,* 59 Ill. 534.

If the accident in the present case had occurred at a great distance from any human habitation, at a place where children or other persons were seldom, if ever, seen; and if the employés of the Carbon coal and mining company, or of the railroad company, had not known, or had any reason to suppose, that any person was present or in danger, then we could say as a matter of law, that no culpable negligence was committed; but on the other hand, if the accident had occurred within the heart of a populous city, where children frequently played, then we could say as a matter of law, that culpable negligence was certainly committed, and that the facts themselves under such circumstances would constitute culpable negligence *per se.* But neither of these supposed cases is the present case. The present case occupies a place somewhere intermediate between these two supposed cases. It occupies such a place that we think we can say that the facts of the

case do not constitute culpable negligence *per se.* But supposing the plaintiff to have been under or behind the standing car, and out of sight from the coal shaft and second car: then as to whether the facts are such that we could say that they do not constitute any culpable negligence, or that they should be submitted to the jury to determine whether they constitute culpable negligence or not, this court has not as yet fully agreed.

IV. We do not think that the second and third questions above mentioned were fairly submitted to or considered by the jury. It does not appear from the record that the jury had any opinion as to where the plaintiff was, with reference to the standing car, at the time he was injured, or any opinion as to whether it was culpable negligence on the part of Williams and Black to leave the standing car in the condition in which it was left, and in permitting the second car to run down against it with such force as to push it over the plaintiff and injure him — provided the standing car was pushed over him and did injure him.

The defendant's counsel submitted to the court numerous instructions in writing, numbered respectively, 2, 3, 6, 9, 11, 16, 17, 18, 21, 22, and 23, for the purpose of having these questions submitted to the jury for their determination; but the court refused to give them. The defendant's counsel also submitted a question to the court to be submitted to the jury, for the purpose of ascertaining the opinion of the jury substantially as to whether the standing car was pushed over the child's arm or not, and substantially as to what was the relative position of the plaintiff and the standing car immediately preceding the accident; but the jury simply answered the question, "We do not know." Indeed, the whole case would seem to indicate that the jury had no intelligent opinion with respect to the relative position or situation of the plaintiff and the standing car immediately antecedent to the injury complained of, or whether it was negligence or not for Williams and Black to leave the car standing in the condition in which they did leave it, and permit the second car

to run down against it — provided the plaintiff was behind or under the standing car, so that he could not have been seen by Williams and Black from the coal shaft, or from the second car, at the time they permitted the second car to run down the side track. Indeed, it would seem that the case was not decided by the jury upon the real facts of the case; for the real facts of the case would seem to indicate that the plaintiff was behind and north of the standing car, and out of sight from Williams and Black, just prior to the time when he received the injury; while it would seem that the jury supposed that that fact made no difference in the case, and that if they found that neither Williams nor Black looked to see whether the track was clear, just before they permitted the second car to move down the side track, that then they, the jury, should find in favor of the plaintiff and against the defendant, although it might have been impossible for Williams and Black to have seen the plaintiff from the coal shaft or from the second car, and although they may have exercised the greatest possible care and diligence in every other respect. Now it may have been negligence for Williams and Black to have permitted the second car to move down the side track, without first looking down the track to see that it was clear — provided they did so fail to look; but if their failure to so look did not cause the injury complained of, nor contribute thereto, or in other words, if they could not have seen the plaintiff by looking down the side track, and if they exercised due care in every other respect, then the railroad company should hardly be held to be responsible for such failure on the part of Williams and Black to look. Their negligence in such a case could hardly be held to be culpable negligence *per se*, with respect to the injury that actually occurred.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.