## Minnie S. Mahon, et al., v. People of State of Illinois, ex rel. Robertson.

### Gen. No. 12,173.

1.   HABEAS CORPUS—*when writ of error lies to review judgment in.*   A writ of error lies to review a judgment entered upon a petition for the writ of *habeas corpus* where the contentions were over the custody of a child between parties asserting rights thereto.

2.   HABEAS CORPUS—*when lies.*   Habeas corpus lies to determine the custody of a child where neither of the parties contending therefor possesses any special legal right.

3.   CUSTODY OF CHILD—*how determined.*   Where neither of the parties contending for the right of custody have any special legal right, the question is determined according to the best interests of the child and by a consideration, among other things, of the affectionate care which would be bestowed, the educational facilities granted, the financial opportunities enjoyed and the social position attained.

*Habeas corpus* proceeding.   Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1905.   Affirmed. Opinion filed April 5, 1905.

ROSENTHAL, KURZ & HIRSCHL, for appellants.

LYNDEN EVANS, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from an order of the Circuit Court awarding the custody of Emilie Wallace Robertson, a child six years of age, to her aunt, Margaret Robertson, who proposes to take the child to her own home in England. To this end she applied for a writ of *habeas corpus,* and the court ordered the respondents to deliver the child to her custody.

It is first urged on the part of appellee that the appeal should be dismissed because it is argued that in a *habeas corpus* proceeding no appeal nor writ of error will lie. In a recent case (Cormack v. Marshall, 211 Ill. 519), which was an original proceeding in the Supreme Court in a cause previously litigated in the Circuit Court, it is held by a majority of the court that in contentions over the custody of a child between parties asserting rights thereto, the proceeding under a writ of *habeas corpus* may be regarded as a private suit in which the public is not concerned. It is not to be treated as though the child was contending for its own liberty, but rather as a contest between other persons claiming to be interested. In such case, the order of a court having competent jurisdiction is a final order (Idem, p. 525) from which in the absence of a statutory provision allowing an appeal, which it is said "only lies where expressly authorized" (Idem, p. 529), a writ of error will lie. In the case at bar, however, counsel unite in the suggestion that for the sake of avoiding delay, the cause shall be disposed of on the merits, in case we are of opinion that either an appeal or writ of error will lie.

William McG. Robertson, the father of the child as to the custody of whom this controversy arises, was born in Glasgow, Scotland, about the year 1867, and came to Chicago in 1892. He was then and continued to be a British subject. He married in Chicago and the child in controversy was born here August 13, 1898. The mother died four days thereafter, and the father placed the infant in the custody of appellants October 12, 1898. Since that time they have had her in their charge, apparently caring for her with tenderness and affection. The father died

in Chicago March 24, 1904, leaving a will apparently executed upon the day of his death. In and by that instrument, after providing for some small legacies, he leaves the main portion of his estate, estimated to be worth not more than $6,000, and possibly not over about $4,000, to his daughter and under the control of trustees, the income and such of the principal as in the opinion of the trustees may be necessary, to be used for the support, education and maintenance of the child until she shall attain the age of twenty-five years. Then half of the estate is to be paid to her, and the rest held in trust as before until she shall reach the age of forty years. The will provides further as follows: "In the past I have always paid Mrs. Thomas Mahon twenty-five dollars per month for the support, education and clothing of my said infant daughter, but this shall be a question with the trustees as to what payments can be made with the money at hand. I have always held the right, that as my said daughter was my only child, I have refused to promise or grant to Mrs. Thomas Mahon or any other person a contract or right to care for my said daughter Emilie throughout her life, and I trust the trustees will see fit to carry out the same arrangement during her minority."

It is claimed by appellants that the Circuit Court was without jurisdiction to exercise its powers under the writ of *habeas corpus*, since it is said "there are other more apt tribunals established for the purpose of determining the custody of the child," and that "a court of guardianship is the appropriate tribunal." We do not regard this as an open question in a case like that before us, and need not consider the contention further. As said *In re* Bullen, 28 Kans. 557-563, "as to children at least the scope of the writ has been largely extended." Cormack v. Marshall, *supra*, p. 524. Nor is it important to consider whether the child is in legal contemplation an American citizen. She is the daughter of a British subject, although she was born in this country. But it may sometimes be the duty of the court to expatriate a child who is a citizen (*In re* Bullen, *supra*, p.

786), and assuming for the sake of the argument that she may be so regarded the controlling question, nevertheless, is, what is for the best interest of the child?

This is a question which it is not always easy to determine. In the case at bar neither party has any special legal right. The father placed the child in the care of appellants when she was less than two months old. She has been in their charge ever since, although it appears he intended ultimately to reclaim her, in view of his second marriage, which was about to occur. While the father was compensating appellants, nevertheless it would appear that they bestowed upon the motherless little one care and attention beyond the power of money to purchase. The father recognized the fact that the child had become attached to these foster parents, and they to her, to such an extent that he proposed gradually to wean her away after his remarriage, rather than by hasty separation unnecessarily to wound the feelings of both. After the father's death the trustees appointed by his will decided that so far as their authority went the child should remain with appellants as before, the latter to receive the net income of the estate held in trust for the child's benefit. Appellants now offer to keep and clothe the little one suitably until she shall come of age for affection's sake, without any compensation. It appears that they own a modest home in the suburbs of Chicago, which is still incumbered for about two-thirds of its value. They are in receipt of a modest income earned by the husband and oldest son. Under these circumstances the fact that they are willing to burden themselves for the support of the little one is strong evidence of affection, and warrants the belief that so far as is in their power the child would be carefully and lovingly trained, educated and provided for. It must be with great hesitation that a court would venture to sever the ties of affection between appellants and the child who has known no other care, to whom they have filled the place of parents almost from the hour of its birth, more than six years; and this may only be done when it becomes apparent that the best interests of the child so require.

It is evident, however, that the child's interest may so require.     Appellants, no longer youthful, are chiefly dependent for their income upon the daily earnings of the husband.     Should anything happen to incapacitate him, even temporarily, they might speedily become unable to do for the child as they otherwise would, or even to continue its support and education at all.     Should the wife lose her health or become otherwise incapacitated, it might easily happen that the little one would become dependent upon the care or eventually the charity of strangers.     Her own estate in the hands of the trustees in this country left by her father is likely to be small, perhaps not more than about four thousand dollars all told. She has no relatives here, and if deprived by any of the frequent contingencies of life of the care and direction of the generous woman who has stood in the place of mother, the child would certainly be left in a most unfortunate position.

On the other hand, the petitioner is a sister of the child's deceased father.     She is one of three unmarried sisters, women of refinement living together in London, each of whom, it appears, has an income of about a thousand dollars a year.     The sisters join with petitioner in wishing to care for the child and "bring her up in accordance with the condition of her family."     There are two other sisters, one married and one about to be.     Here is a circle of relatives all in comfortable financial condition, the loss of one or more of whom would still leave the child with those upon whom she can in all human probability safely rely for such care and attention as her orphaned condition must naturally invoke.     They have shown their interest in their brother's parentless child by sending petitioner across the sea at no inconsiderable expense and instituting these proceedings, when the request that she be given up to her relatives was denied her.     They are her natural guardians.     It was stated by the trial judge in deciding the question that it had been made to appear to him, the father had desired to entrust the child to his sisters in his lifetime, a request which at that time for sufficient reasons they were unable to comply with.

Without pursuing the discussion further, it must suffice to say we are satisfied that so far as human foresight can go, it is decidedly for the child's interest that she should be awarded to the custody of the petitioner. This consideration must prevail, and the judgment of the Circuit Court must therefore be affirmed.

*Affirmed.*