This action was brought by plaintiff, as administratrix of Michael Connell, deceased, to recover *Page 355 
damages by reason of the death of said Connell, alleged to have been caused by the negligence of defendant.
For a period of two years prior to the date of the accident the intestate had been employed as a flagman at the Washington street crossing in the yard of defendant at Newburgh. His hours of service were continuous from seven o'clock in the morning until seven o'clock in the evening. Washington street was extensively used as a public highway and crossed at right angles defendant's tracks at grade. The defendant daily moved about fifty passenger trains over the crossing in addition to regular and extra freight trains. For some distance from the crossing was a retaining wall running parallel with the tracks, which wall was about seven feet high, upon the top of which was a railing, and the top of the wall was level with the street adjacent. The space between the wall and the tracks of the defendant was five feet nine inches. The overhang of the locomotive was eighteen inches, leaving a clear space of four feet three inches.
On the 23d day of February, 1909, about eleven o'clock in the morning the intestate was observed at a point about seventy feet north of the crossing standing with his face towards the retaining wall in the act of relieving the demands of nature. At the time he was seen by the witness a train was approaching, bound east, and was about ten or fifteen feet north of where the intestate was standing.
Upon the trial counsel for the plaintiff stated: "I will concede that Connell had his face to the wall in the act of urinating at the time he was killed." Again at the close of the entire case counsel for plaintiff again stated: "In order to avoid any misunderstanding, the plaintiff concedes that at the time when the approaching east bound train had reached a point ten or fifteen feet north of the place where the deceased met his death he was last observed seen standing facing the wall in the act of urination." *Page 356 
The train consisted of an engine, tender and caboose and was moving at the rate of ten or twelve miles an hour. After the train had passed the point where Connell was standing his body was found in the space between the tracks and wall; his head was cut open and he was lifeless.
On behalf of the plaintiff evidence was adduced by the witness who saw the accident and by the three sons of the intestate who were in the habit of taking dinner to him to the effect that they had seen the intestate use the place in question for his personal convenience a large number of times while he was flagman at the crossing, but no evidence was offered on behalf of the plaintiff tending to disclose knowledge of such use of the place by the defend ant. The agents and servants of the defendant disclaimed knowledge of such fact.
It was claimed by counsel for plaintiff that the defendant, having failed to furnish facilities to enable the intestate to relieve himself, and the demands of nature from time to time being incident to his long continuous hours of service, the defendant owed to the intestate the duty of exercising reasonable care for his safety while he was engaged in using the place in question; that the use by the intestate of the place for the purpose stated, without objection by defendant, was constructive notice to defendant of the use of its property therefor; that the intestate had the right to assume that the engineer would maintain a look-out; that proper signals would be given announcing the approach of the train, and that the intestate would not be wantonly run over or injured; that to one standing at the place in question the view looking north would be obstructed by certain snow guards, switch indicators, telegraph poles, etc.
The trial justice in his charge to the jury said: "The theory on which this case is presented to you is to determine whether or not this defendant had notice, constructive notice, of the long user of this place by this servant *Page 357 
of the defendant for the purpose for which he used it. That is, that it acquiesced in the use of this place by this servant for the purpose for which they knew he was there, and that in the exercise of reasonable care it should have approached that place so as not to commit upon him unnecessary injury."
Counsel for the defendant excepted to the charge of the justice, and the court added: "I said I will leave it to them [the jury] to say whether there was constructive notice. If it was not, this case falls of itself. The moment there is no constructive notice to you, that is the end of the case."
Upon the first trial of the case the witness to the accident was the only person who testified upon the subject of alleged notice, and he then testified that he had seen the intestate using the place in question several times. The Appellate Division, on appeal from the judgment rendered upon said trial, reversed the judgment, and amongst other things said that there was no proof that the master had indicated the place as one to be used for such purpose, or that it knew or should have known that the place was being used for that purpose. Upon a retrial, from which this appeal is taken, that evidence was supplemented by the testimony of the three sons, to which attention has been called. The Appellate Division, upon appeal from the judgment in favor of the plaintiff, affirmed the judgment by a divided court, the dissenting judges declining to concur in such decision upon the ground that the case had been submitted to the jury upon the question of constructive notice, and the evidence was not sufficient to establish that fact.
Giving to the plaintiff the most favorable construction of the evidence in this case, we are of opinion that the record fails to disclose any omission of care or negligence on the part of the defendant, but affirmatively establishes that the plaintiff's intestate was guilty of negligence contributing to the accident as a matter of law. *Page 358 
The question of the master furnishing the employee a safe place in which to work is not in this case. The accident to the intestate did not grow out of the work Connell was assigned to, or occur at a place where he was required in the discharge of his employment and duties to perform services for the defendant. Unfortunately for the intestate he selected a place for his own accommodation and convenience which upon the most favorable view of the evidence was a dangerous place. The space between the overhang of the locomotive and the wall was only four feet three inches. The intestate with knowledge of the frequency of trains passing at the place spoken of selected for his convenience a spot where upon plaintiff's theory his view of an approaching train would be obstructed by the poles, snow guards, switch indicators, etc. The concession of counsel that plaintiff's intestate at the time he was killed had his face to the wall, taken in connection with the evidence of the only witness to the accident that Connell did not look for the approaching train, justifies the conclusion that the intestate, in view of his knowledge of the number of trains passing and the opportunity to appreciate the danger likely to be encountered by his presence there, was unmindful of his safety, thus contributing to the accident which caused his death.
We are also of opinion that the learned trial justice was in error in charging the jury on the question of constructive notice, in effect, that if the deceased was in the habit of going to the place where the accident occurred, and that such place was used for the purpose mentioned for such a length of time that the defendant knew or should have known of such use, and acquiesced therein, it was bound to use care and prudence to give the intestate warning when its train approached that place.
The roadbed of defendant was private property in use by it for the operation of its trains. It was clearly a place of more or less danger. The plaintiff's intestate *Page 359 
was familiar with the uses for which the property was employed. There was no implied invitation by the defendant that Connell should travel upon the roadbed or use the place in question for his personal ends. Decisions applicable to a licensee in a store, a market place, a place of amusement, or where the public was suffered to travel or have access, or where the public for many years used a way across the tracks of a railway company with the acquiescence of the company sufficient to warrant a license or permission to cross the tracks at such point, are not applicable to the facts presented. If we assume that Connell was at the point in question by sufferance of the defendant, such implied permission would not carry with it an assurance of safety. His right, if any, was merely that of a licensee, and he selected the place and exercised the privilege to use it for his own convenience, in the condition in which it was, with knowledge of the risks incident to such use of the same. (Van Schaick v.Hudson R.R.R. Co., 43 N.Y. 527; Nicholson v. Erie Ry. Co.,41 N.Y. 525; Barry v. N.Y.C. H.R.R.R. Co., 92 N.Y. 289;Larmore v. Crown Point I. Co., 101 N.Y. 391; Cusick v.Adams. 115 N.Y. 55.)
To hold the defendant liable upon the facts disclosed in this case would practically render it impossible for a railroad company to transport passengers and freight within the limits of reasonable time, and permit a recovery upon a theory of constructive notice which has not thus far been established by the courts.
The judgment should be reversed and a new trial granted, costs to abide the event.
WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, MILLER, CARDOZO and SEABURY, JJ., concur.
Judgment reversed. etc. *Page 360