(43 South. 1006.)

No. 16,344.

GROSS et ux. v. FISCHER LUMBER & MFG. CO., Limited.

(April 15, 1907. Rehearing Denied May 29, 1907.)

MASTER AND SERVANT—INJURY TO EMPLOYÉ—EVIDENCE.

Where an employé in a saw and planing mill is injured whilst operating, for his own purposes, a machine which does not constitute part of the machinery of the mill, but is under the control and subjected to the use of a third person, who merely gets power from the mill, the proprietor of the mill is not liable for the damages resulting from such injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 153.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Frank Gross and Mary Dorn, his wife, against the Fischer Lumber & Manufacturing Company, Limited. Judgment for defendant, and plaintiffs appeal. Affirmed.

Robert John Maloney, for appellants. Morgan & Milner, for appellee.

### Statement of the Case.

MONROE, J. Plaintiffs sue for the damages resulting to them from the death of their minor son, who lost his life while in defendant's employ through an accident which plaintiffs attribute to defendant's negligence. Defendant denies the alleged negligence, denies that the accident occurred while plaintiffs' son was engaged in the discharge of any duty to which he had been assigned by it, and alleges that the apparatus by which he was injured was under the control of another person and was being used by the minor, at his own instance and for his own purposes.

The following are the facts as disclosed by the evidence: Plaintiffs' son, William Gross, was about 20 years old at the date of his death, and, for several years prior to that event, had been working in defendant's saw and planing mill in the capacity of oiler and helper, there being no testimony suggesting the idea that he had ever been called on to operate any of the machinery or had ever attempted to do so. In June, 1904, or about that time, defendant entered into an agreement with George Fehl (who was engaged, or about to engage, in the business of dealing in sawed and split wood), whereby Fehl was to take all the "spliced wood," or "cross timbers," from the rafts which came to the mill at a certain price per cord, and was to be supplied, from the mill, with the power necessary for the sawing. It was also agreed that he should be allowed to remove from that part of the mill in which the work of the mill was done and to set up, in the rear of the building, an apparatus consisting, in part, of an oblong iron frame, suspended vertically, so as to afford it a forward and backward swinging movement, upon the lower end of which was (at that time) a 16-inch circular saw; and,

projecting forward from the upper end of which was a weight, or governor, which, by pulling that end forward, pushed the lower end, with the saw, when disengaged, somewhat backward from the perpendicular, the power for the driving of the saw being conveyed by a belt geared from a countershaft of the mill to what may be called a projecting axle of the saw which passed through the end of the frame to which the saw was attached. As a necessary adjunct to this apparatus there was a work table, which, with the 16-inch saw, was probably about 28 inches in height, 20 feet long, and 18 inches wide. Fehl, however, found that for his purposes the 16-inch saw was too small, and he substituted a 20-inch saw in place of it, and had his table made 2 feet high, so that the saw, in cutting transversely the material laid on it, worked in a slot (cut through the table) to a depth of about an inch, thus leaving 9 inches between the surface of the table and the center, or axle, of the saw, though as the end of the axle, or pulley, upon which the belt was geared, was probably several inches in width, this space was necessarily reduced in proportion upon that side of the frame. The whole apparatus was moved and re-established at the expense and under the direction of Fehl, and was thereafter devoted primarily to his use; and, as he was to operate it himself, he arranged it to suit himself, among other things, leaving off a guard, or hood, which had covered the upper half of the 16-inch saw (it being too small for the 20-inch saw), and attaching the swinging frame to the structure upon which it was suspended by means of a rope, the purpose of which was (as we take it) to prevent the operator, in the event of his slipping or falling on loose lumber whilst at work, from pulling the saw entirely through the slot in the table and against his body. Whilst, however, the apparatus, as thus arranged was under Fehl's control, and was kept by him in such or-

der as he thought necessary, and whilst it thereafter did no mill work, it was frequently used, without objection on his part, by employés of the mill for the sawing of refuse lumber which they were allowed to take to their homes for fuel; the engineer, particularly, using it in that way himself and for the president of the company. It seems, also, that the decedent not unfrequently made use of it in preparing fuel for members of his family, and the engineer testifies that he was so engaged at the time of the accident, and the testimony, otherwise being positive and uncontradicted, that he was not, at that time, acting under instructions from any one connected with the mill, and that no one so connected had ever directed him to do such work or to operate the saw for any purpose. At the moment of the accident, which occurred between 2 and 3 o'clock in the afternoon, no one was present save the lad who was injured, and his injuries were of such a character that he died within half an hour without speaking. Plaintiffs produce a piece of rope, which is said to be part of that by which Fehl had connected the swinging frame to the permanent structure, in support of their theory that the rope was insufficient to subserve the purpose intended—of holding back the saw within the edge of the work table—and that such insufficiency was, or should have been, known to defendant. Defendant, on the other hand, produces a piece sawed from a plank which the decedent had evidently been engaged in cutting up, and it is shown that there were five other pieces of the same plank found piled upon the work table, from which circumstance, and from the fact that the piece produced in court bears marks indicating contact with the belt by which the saw was driven, it is deduced that the operator, instead of removing the pieces from the table as he sawed them off, piled them one on top of the other, until they filled the space between the surface of

the table and the end of the axle to which the belt was geared, with the result that there was a momentary jam, and then, by reason of the rapid movement of the belt and axle, in juxtaposition with the pile of wood beneath, a sudden jump forward of the end of the frame, which carried the saw through the slot in the table and against the body of the operator. And there is testimony to the effect that, if such a condition was brought about—that is to say, if the end of the revolving axle was brought in contact with the pieces of plank so piled up beneath with insufficient room for its operation—something of necessity was bound to give way, and that, in all probability, not even the chain, which Fehl afterwards substituted for the rope, would have held the saw back. There is also testimony by the engineer to the effect that, seeing William Gross using the saw from time to time, he had warned him and given him instructions as to the possibilities of danger. Upon the facts as thus presented, there was judgment in the district court in favor of defendant, and plaintiffs have appealed.

### Opinion.

There is no basis of fact or law upon which defendant can be condemned in this case. Plaintiffs' minor son was not employed to operate the saw by which he was killed, and was operating it, at the time of the accident, not by the directions of any one connected with the defendant, but of his own volition and for his own purposes. The saw apparatus was not even part of the machinery of the mill which it was his duty to oil, but was a separate machine which had been turned over to the control and use of a third person and with which defendant had no connection save that it owned it; that it occupied a place in the rear of its building; that it furnished the motive power needed for its operation; and that, when the person who had control of it was not using it

himself, it was at times used by its officers and employés for the sawing of fuel for themselves and families.

The judgment appealed from is accordingly affirmed.