FRED NEICE, APPELLEE, v. FARMERS CO-OPERATIVE CREAMERY & SUPPLY COMPANY, APPELLANT.

FILED DECEMBER 14, 1911. No. 17,003.

1. **Master and Servant: INJURY TO SERVANT: RIGHT TO USE PREMISES.** An employee in a business in which a steam boiler is used is not a mere licensee in going into the boiler room where conveniences for the use of the employees are established, and they are accustomed to use the same with the knowledge and consent of the employer.

2. ———: ———: ———: QUESTION FOR JURY. Under such circumstances, if an employee remains in said boiler room during the rest hour, with the implied permission of the employer, he is entitled to the ordinary protection of an employee, and it is a question for the jury, upon substantially conflicting evidence, whether the employer has so consented.

3. ———: ———: NEGLIGENCE OF EMPLOYER. If the employer is guilty of negligence by which an employee is injured while in such boiler room, it is immaterial that the employer did not know that the employee was in the boiler room at that particular time and liable to be injured by such negligence. It is sufficient if he knew that the employees were at times properly in said boiler room.

4. ———: ———: ———: QUESTION FOR JURY. If the employer allows an inexperienced man to operate the valves of a steam boiler and let the steam pressure with such force into a steam trap as to cause an explosion of the trap, and the trap is shown by the evidence to be of proper construction and suitable for the purpose for which it was intended, and the gauges upon the boiler for determining the steam pressure are so placed that the operator cannot observe them, it is proper to submit to the jury the question of the employer's negligence as to the cause of the explosion.

5. **Appeal: INSTRUCTIONS.** It is not reversible error to instruct the

jury that the employer should "use every reasonable precaution" to safeguard his employees, if the instructions as a whole fully and properly define negligence and ordinary care.

6. Witnesses: PRIVILEGED COMMUNICATIONS. Defendant offered to prove by the physician statements alleged to have been made by plaintiff to the physician some time after he treated him for the injuries complained of. *Held*, That it was not an abuse of discretion to exclude this evidence as privileged under the circumstances stated in the opinion.

7. Damages. Upon the evidence indicated in the opinion, it is *held* that the verdict for $3,000 damages is not so excessive that this court must say as matter of law that the judgment is clearly wrong.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*Sullivan & Rait, contra.*

SEDGWICK, J.

The plaintiff was employed by the defendant in its butter factory in Omaha. He was injured by the explosion of a steam trap, and brought this action to recover damages. The jury rendered a verdict in his favor for $3,000, and from the judgment entered thereon the defendant has appealed.

The defendant, in the manufacture and sale of butter and ice cream, occupied a three-story building with basement, and employed an engineer, fireman, butter-makers and other workmen. The plaintiff was employed in what was called a "churn room." The accident complained of occurred in what was called the "boiler room." In this latter room there is a trap or basin which is connected with cast iron pipes with the boiler, and also by similar pipes with the public sewer. It is used for "draining or blowing off the boiler." In so using it, the engineer opens the valves in the boiler and permits the steam and water to pass into the pipe, and thence to the

sewer. The trap is covered by a circular steel or cast-iron plate two or three feet in diameter and an inch in thickness, secured to the trap by bolts which are set in the concrete floor. When the accident occurred, the plaintiff was in the boiler room, and had just finished eating his lunch and was standing near the trap. In the absence of the engineer, the fireman, as appears to have been his custom under such circumstances, opened the valves communicating with the trap, and the explosion occurred, causing the plaintiff's injury. The plaintiff alleges that the fireman "did negligently and recklessly open the blow-off valves and cocks of the boiler and permitted great quantities of steam and water under enormous pressure to pass from the boiler into said basin," which caused the explosion. The defendant insists that the verdict and judgment are not supported by the evidence.

1. It is said that the plaintiff "while in the trap room eating his lunch was a mere licensee, and, there being no proof of wanton or wilful injury to him by appellant or its fireman, appellee cannot recover." The churn room where the plaintiff worked was cold and not a suitable place for resting and lunching during the noon hour. A few months before the accident happened it had been the custom of the workmen, generally, to use the boiler room for this purpose, but the company had prepared another room on the floor above, which room was at the time of the accident more generally used by the employees. The closets for the use of the men, however, were in the boiler room, and these were being used generally at the time of the accident. The men were supposed to go into the boiler room to use these closets, and the plaintiff was not a mere licensee in so doing. The engineer testified that the men were not expected to remain in the boiler room during the noon hour, and that he had so instructed the plaintiff, and had frequently directed him not to remain in the boiler room for eating his lunch. The defendant's foreman testified

that he had never given the men such orders, and the plaintiff positively denied that he had ever received any such directions. Under this conflicting evidence, the jury might have found that the plaintiff was not violating any rules of the company in remaining in the boiler room during the lunch hour, and that he was not a mere licensee therein.

2. The allegation of the plaintiff that the fireman, Reisberg, knew that the plaintiff was in the trap room at the time that the accident occurred is not supported by the evidence. The fireman testified positively that he had no such knowledge or notice, and there appears to be no direct evidence that he did. The fireman, however, was bound to know, and the evidence indicates that he did know, that the closets in the boiler room were designed for the use of the men and that they were so used, and that it was reasonable to expect that the men might probably be in the boiler room at any time. It is not therefore necessary that he should know at that particular time that this plaintiff might be exposed to danger by his carelessness.

3. The principal question in this case is whether there is sufficient evidence from which the jury might find negligence on the part of the fireman, Reisberg, in opening the valves and allowing the steam to escape in the trap in the manner in which he did. The evidence shows that this trap was suitable and properly constructed in the ordinary manner, and had been continuously in use for some time, but its construction, as above stated, conclusively shows that it was not intended to sustain the force of the full boiler pressure, and was incapable of doing so; if submitted to such pressure, there must necessarily be an explosion. It appears that there were steam and water-pressure guages upon the boiler, but these were so located that they could not be seen by the person operating the steam valve. The custom was that another person should watch these guages while the steam was being admitted to the trap, but this custom

was not always observed. On this occasion, the engineer being absent, the fireman undertook to "blow off" the boiler. It appears that he had done this at other times in the engineer's absence. The evidence shows that he had some experience in taking care of and operating the boiler, but he had been but a short time in that employment, and was not an experienced engineer. The plaintiff contends that not to have another person watching the gauges and notifying the operator of dangers was in itself negligence. It may be that a skilled engineer in operating the valves could, from his experience, judge the pressure he was causing upon the steam trap with sufficient accuracy to avoid danger of an explosion. If the jury so found, they might still consider that to allow an inexperienced man to operate these valves without another to observe the guages, and without means of knowing the dangerous pressure upon the steam trap, was negligence. It cannot be said that there is such a failure of evidence as to require the court to determine this point as a question of law.

4. In the eighth instruction the court told the jury: "You are instructed that a workman, during the hours of his service, whether at the noon hour, or hour of work, while at such places as is usual for such employees as he was, had a right to rely upon the fact that the employer will take every reasonable precaution looking to the safeguarding of such places as safe places to be." It is said that this is wrong, because the law "only requires reasonable care and prudence in providing a safe place." It is perhaps not usual to use the word "every" in such instruction, and the language suggested in the brief is more accurate. Construing the instructions together, they so define negligence and reasonable and ordinary prudence that it seems impossible that the jury could have been misled by the instruction complained of. In the fifth instruction the jury were told: "By 'negligence' is meant the doing of some act, under the circumstances surrounding the accident involved

which a man of ordinary prudence would not have done; or it is the failure to do some act or take some precaution which a man of ordinary prudence would have done or taken under the circumstances." And it is also said in this instruction: "By 'ordinary care' is meant that amount or degree of care which common prudence and a proper regard for one's own safety or the safety of others would require under the circumstances." The issue as to the defendant's negligence was plainly and properly stated to the jury.

5. The physician who treated the plaintiff after the accident was, while upon the witness stand, questioned by the defendant as to statements that he had heard the plaintiff make, a short time before the trial, in regard to his injuries. This was objected to as calling for a privileged communication, and the objection was sustained. This ruling is complained of, and it is said that the relation of physician and patient had terminated a long time before the statements of plaintiff which it was sought to prove, and that therefore the question was not privileged. It appears that two other physicians employed by the defendant were examining the plaintiff, and the plaintiff's former physician was called in by these others. The plaintiff still regarded him as his physician, and objected to his assisting the physicians employed by the defendant in obtaining evidence. The two other physicians testified to what took place upon their examination, and the trial court seems to have considered that in making statements to his former physician the plaintiff still regarded those statements as confidential. We do not think that there was such an abuse of discretion on the part of the trial court in this ruling as to require a reversal of the judgment.

6. It is said that the verdict for $3,000 is more than the evidence will sustain. There was some conflict in the evidence as to the extent of the plaintiff's injuries and as to the probability that they are permanent. It is conceded that the plaintiff was badly scalded by the

steam; that he was rendered unconscious, and was for several days confined in a hospital. There was also substantial evidence that his hearing and his eyesight were both seriously injured, and that at the time of the trial, which was about a year after the accident, he was still suffering from the effects of the injury. There is no mathematical rule by which such damages can be computed. The matter is peculiarly within the province of the jury, and, when the evidence is conflicting, this court cannot interfere with the verdict of the jury, unless upon the whole evidence the verdict is clearly wrong.

We have not found any sufficient error in the record requiring reversal, and the judgment of the district court is

AFFIRMED.