E. 1099; Kenney v. Rhinelander, 28 App. Div. 247, 50 N. Y. Supp. 1088, affirmed 163 N. Y. 576, 57 N. E. 1114.

[2, 3] The complaint was dismissed at the close of the plaintiff's case, on the ground that she had failed to establish her freedom from contributory negligence. The evidence showed that the plaintiff was proceeding carefully down the stairway. She was entitled in a non-suit to the most favorable inferences to be drawn from the evidence, and the court was not warranted in disposing of the issue of contributory negligence as matter of law, but should have submitted it to the jury, to be determined by them as one of fact.

Judgment reversed, and new trial ordered, with $30 costs in one action to appellant to abide the event. All concur.

---

### MUSTAVOI v. ST. JOHN THE BAPTIST FOUNDATION.

(Supreme Court, Appellate Term, First Department. May 4, 1916.)

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Henry Mustavoi against the St. John the Baptist Foundation. From a judgment dismissing the complaint at the end of plaintiff's case, plaintiff appeals. Judgment reversed, and new trial ordered.

Argued April term, 1916, before GUY, COHALAN, and WHITAKER, JJ.

Herman Turkel, of New York City, for appellant.
Amos H. Stephens, of New York City, for respondent.

COHALAN, J. Judgment dismissing the complaint at the end of plaintiff's case is reversed, and a new trial ordered, with $30 costs in one action to the appellant to abide the event, on the ground that plaintiff's freedom from contributory negligence was a question of fact for the jury to determine. All concur.

---

### BERG v. GREAT LAKES DREDGE & DOCK CO. et al.

(Supreme Court, Appellate Division, Third Department. May 3, 1916.)

MASTER AND SERVANT ☞403—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—INJURIES—"ARISING OUT OF AND IN COURSE OF EMPLOYMENT."

Presumption in Workmen's Compensation Act (Consol. Laws, c. 67) § 21, that in any proceeding for compensation the claim came within the provisions of the act may be rebutted, and where an employé who lived on a dredge went ashore for purposes of his own, became intoxicated, and on returning fell off a dock not owned by the master before a small boat came to take him to the dredge, his resulting death was not within the course of his employment, so as to warrant compensation.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞403.
For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

Appeal from State Industrial Commission.

Claim by Hulda Berg under the Workmen's Compensation Act for compensation for the death of Albert Berg against the Great Lakes Dredge & Dock Company, employer, and the Employers' Liability In-

surance Company, Limited, insurer. From an award of the State Industrial Commission, defendants appeal. Reversed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Bertrand L. Pettigrew, of New York City (Walter L. Glenney, of New York City, of counsel), for appellants.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen., of counsel), for State Industrial Commission.

COCHRANE, J. The facts in this case, as found by the commission, are as follows:

"On April 22, 1915, the day when Albert Berg received the injuries which resulted in his death, he was employed as a craneman on a dredge located in the Hudson river, at Troy, N. Y., which dredge was owned and operated by the Great Lakes Dredge & Dock Company, a corporation engaged in the business of dredging the Hudson river at that place. The dredge worked continuously 24 hours a day, and Berg and another craneman usually worked on 12-hour shifts. Under his contract of employment, Berg was furnished living quarters on the dredge and did live there. The employer furnished a boat to take the men to and from the dredge and from the shore. During the afternoon of April 21, 1915, Berg obtained permission from the man in charge of the dredge to go ashore to have a check cashed, and went ashore in the company's boat. At about 4 o'clock in the morning of April 22d Berg hailed the dredge from the dock along the shore, which was the customary place for the men to come to take the boat out to the dredge. A boat was sent from the dredge to the shore, but the person rowing the boat failed to find Berg and started to return to the dredge, when a call was again heard from the dock, and the boat returned to the dock. The man rowing the boat then noticed Berg in the water going under a drillboat, which was located near by, and a tug of the employer attempted to rescue him without avail. Berg was drowned, and his body was recovered from the river two days later at about a mile downstream."

It further appears by the uncontradicted testimony of disinterested witnesses that Berg was intoxicated. He had been spending the night in a saloon in Troy from about 8:30 in the evening until about 3:30 in the morning, or half an hour before he fell in the river. The last person who saw him before the accident, so far as the evidence discloses, states that he was then at the corner of River and State streets and, in the language of the witness, "staggering drunk," just having left the saloon where he had been since early in the previous evening. But the commission has found that the accident "was not occasioned solely by the intoxication of the injured employé while on duty."

We think, however, that the injury did not arise out of and in the course of the employment of the deceased, and that the facts as found by the commission and the uncontradicted evidence conclusively overcome the presumption created by section 21 of the Workmen's Compensation Law that the claim comes within the provisions of that law. Berg went ashore on the previous evening entirely for purposes of his own. No duty to his employer required him to leave the dredge or to remain away therefrom. His only business was to have a check cashed for himself, and the evidence is clear and undisputed that he passed the greater part of the night in personal amusement and entertainment. If he had fallen overboard from the boat which was

conveying him from the dock to the dredge, a different question would be presented. But he fell from the dock when there was no boat present, and he was consequently not even attempting to get aboard the boat of his employer which was used to convey the workmen from the dock to the dredge. The dock or place where he fell into the water was not owned or controlled by the employer. In no sense, therefore, had Berg reached the premises of his employer. The case is no different in principle from what it would be if Berg had received an injury in the streets of the city on his way to the river just before he fell therein. It does not change the case that he lived on the dredge. The controlling fact is that he had been ashore solely for purposes of his own, and lost his life before he returned to his place of employment or to the premises of his employer, and before he had gained access to the boat which was to carry him from the dock to the dredge.

This case is essentially different from the English case of Moore v. Manchester Liners, 3 Butterworth's Workmen's Compensation Cases, 527, relied on by the learned Attorney General. In that case a seaman went ashore for the purpose of obtaining for himself necessaries not provided by the owners of the ship. On returning to the ship he fell from a ladder, which was the only means of access from the dock to the ship. It was held by the House of Lords that the accident arose out of and in the course of his employment. The present case would be more analogous if Berg had fallen from the small boat used by his employer to give him access from the dock to the dredge. But, as we have seen, that boat was not present, and he was not therefore even attempting to get aboard the same. Furthermore, in the case cited the employment of the injured workman was continuous and not intermittent, and he was deemed in a certain sense to have been about his master's business in obtaining for himself necessary articles not provided by his employers. In the present case Berg's service was intermittent, and would not begin until 6 o'clock in the morning, and in no proper sense can it be considered that he was promoting or accomplishing his master's business while he was ashore.

The award should be reversed, and the proceeding remitted to the commission for further action. All concur.