# HOLLIDAY *v.* MERCHANTS & MINERS TRANSPORTATION CO.

1. Where one who was a member of a crew on a certain vessel then lying at the docks, a part of the terminals of the defendant, a steamship company operating ships and maintaining terminals, obtained shore-leave for a short time and availed himself of the permission given him under the leave to go ashore, and, after two hours spent ashore and in the city, returned to the terminals and demanded entrance at a gate, which was the means of entrance to the terminals

Master and Servant 39 C. J. p. 275, n. 32; p. 548, n. 90; p. 567, n. 89.

from the adjacent street, even if the relationship of master and servant existing between the member of the crew referred to and the transportation company had been suspended when the member of the crew left the terminals to go into the city, that relationship came immediately into existence again as soon as the servant returned to the gate and demanded admittance.

2. One employed by the same master as a watchman at the gate referred to, "to protect the terminals from trespassers and to guard its property and supervise and control the entrance and exit of the employees" of the defendant, was a fellow-servant of the other employee who, having left the ship on shore-leave for the space of two hours, had returned and demanded entrance to the terminals to go on the ship and to his duty as a member of the crew.

3. And where an altercation arose between the two employees in regard to the entrance to the terminals of the member of the crew who had been absent on shore-leave and had returned, and in consequence of the altercation the watchman assaulted the other employee and inflicted fatal injuries upon him, the master was not liable in a suit for damages in consequence thereof.

No. 4512. FEBRUARY 27, 1926.

Certiorari; from Court of Appeals. 32 *Ga. App.* 567.

Mrs. Della Holliday instituted an action for damages against the Merchants & Miners Transportation Company, a corporation engaged in the business of a common carrier and operating steamships plying between Baltimore, Savannah, and other southern ports. The claim for damages was based on the homicide of petitioner's unmarried son, Eugene Holliday, 30 years of age, upon whom petitioner was dependent and who contributed $50 a month to her support. The petition as amended alleged that the homicide was committed by L. L. Hallman, one of defendant's employees, under the following circumstances. The defendant in operating its line of steamships owned and maintained certain enclosed terminals or wharves at Savannah, Georgia, for the purpose of docking ships for loading and unloading. A street extended from the city to the terminals. At the foot of the street there was a lattice gate to afford ingress and egress to and from the terminals. Hallman was employed by the defendant as a watchman on the terminals, "whose duty was to protect the said terminals from trespassers and to guard its property and to supervise and control the entrance and exit of the employees of the defendant." Petitioner's son was employed in Baltimore by the defendant as "an oiler" on board its ship "Juaniata." When the ship arrived at Savannah it docked at the terminals. Petitioner's son, having obtained "shore-leave," went

ashore and "up into the City of Savannah" for about two hours. When he returned to go aboard the ship he found the gate closed. It was near the ship's sailing time, and he "tried to go through" the gate. He met Hallman, who was inside the enclosure, the gate separating them. He informed Hallman that he was a member of the crew of the ship, and that he desired to go aboard. Hallman refused to allow him to enter, and an argument arose. Hallman became "angered" at petitioner's son, and "picked up a heavy piece of wooden scantling" and pushed it through the opening in the lattice work of the gate and struck him on the head, and then "opened the gate and came outside" and again struck him on the head with the scantling, producing wounds from which after a few days he died. At the time the blows were struck Hallman was on duty at the gate, and in refusing petitioner's son admittance and striking him he was "acting in the prosecution and within the scope of the business of" the defendant, and the assaults were unjustifiable. Petitioner's son was "in duty bound to be back upon" the ship before it sailed, which it was about to do. Hallman knew that if petitioner's son was guilty of any breach of discipline, either by arriving late or otherwise, he should have been carried aboard the ship and the facts reported to the commanding officer; but instead of allowing petitioner's son to enter and go aboard the ship, or of arresting and taking him aboard the ship, Hallman committed the assaults above described for the express purpose of driving him away from the terminals and his duty aboard the ship. The defendant "had regularly in its service ten (10) or more employees in the same business within the State of Georgia."

The judge sustained general demurrers to the petition, and the plaintiff excepted. The Court of Appeals affirmed the judgment of the trial court, and the case comes by certiorari.

*Shelby Myrick, Edwin A. Cohen,* and *Nimocks & Nimocks,* for plaintiff.

*Adams & Adams,* for defendant.

ATKINSON, J. (After stating the foregoing facts.) After a careful consideration of the allegations of fact set forth in the petition, we are satisfied that at the time the assault which resulted in the death of the plaintiff's son was made the relation of master and servant existed between the defendant and the dece-

dent. The decedent was employed as "an oiler" on board of the ship then docked at the terminals of the defendant company. He was a member of the crew of the ship, and his relationship to the defendant company as an employee had not been broken or discontinued. The mere fact that he had obtained shore-leave, and availing himself of the privilege of that leave left the ship and went into the City of Savannah for about two hours, after the expiration of which he intended to return and did return for the resumption of his duties, did not suspend his relationship; or if the relationship of master and servant between the company and the decedent was affected at all, even if it rendered that relationship "dormant" while he was actually away from the premises of the defendant company, when he returned and reached the gate through which he entered upon the terminals of the company, the relationship of master and servant was resumed. In their brief counsel for plaintiff insist that at the time the decedent was killed he occupied the same relation as a non-employee would have occupied had such non-employee the right to go through the gate on business or otherwise, and that "the petition was not brought upon the theory that recovery could or should be had because Holliday was an employee; but his employment was alleged in order to show that he had a right to be where he was when the assault upon him was committed, and had a right to go through the gate." Whatever may have been the purpose of making the particular allegations referred to, as we have ruled above, the relationship between Holliday and the company,—that is, the relationship of master and servant, was not terminated by his leaving the ship and the terminals on shore-leave for the short space of two hours. Or, even if it was suspended for that short time, the relationship was resumed when he came to the gate and demanded admittance. All the allegations in the petition upon the subject must be considered; and all being considered, the decedent was unquestionably a servant and employee of the company at the time he was injured by the assault of Hallman, the watchman. And the allegations relative to Hallman and his duties show that he was also an employee of the company. His duties were "to protect the said terminals from trespassers and to guard its property and to supervise and control the entrance and exit of the employees of the

defendant." The Court of Appeals reached the conclusion that the decedent and the watchman were fellow-servants within the meaning of our Civil Code, § 3129. And if this conclusion of the Court of Appeals, as announced in their decision, is correct, then the ruling upon this vital question made by that court, that, the decedent and his slayer being fellow-servants, the master was not liable for the death of the former at the hands of the latter under the circumstances set forth in the petition, necessarily followed.

It may be that under rulings made by courts of last resort in certain jurisdictions the watchman who slew the decedent and the latter were not fellow-servants; but under decisions rendered by this court in the construction of the statute last referred to, they were fellow-servants. That statute reads as follows: "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." Civil Code, § 3129. It is apparent that, relatively to the question we have before us, it is necessary to decide whether the two servants ·of the transportation company, the watchman and the decedent, the nature of their duties being considered, were "about the same business," or were "engaged in the common pursuit,"—a phrase which we occasionally find in our decisions, which means the same thing as being "about the same business." In the case of *Ellington* v. *Beaver Dam Lumber Co., 93 Ga. 53* (19 S. E. 21), it was said: "The rule for determining who are fellow-servants is thus stated in Wood's Master & Servant, § 435: 'The true test of fellow-service is community in that which is the test of service, which is subjection to control and direction by the same general master in the same common object; but unless they are subject to the same *general control,* the fact that they are engaged in the same common pursuit does not render them coservants. *It is subjection to the same general control, coupled with an engagement in the common pursuit, that affords the test,* and unless the two elements concur there can be no common service, which disentitles an employee under the control of one master from recovering for injuries received through the negligence of a servant under the control of another master.' " And it will be seen from reading so much of the decision as relates to the question we now have in hand, that the

rule thus laid down in the text-book is adopted as the proper rule for determining questions like this. It seems to us clear that the decedent and the watchman Hallman, who were in the employment of the transportation company, were fellow-servants, under the rule stated for determining who are fellow-servants. They were engaged "in the common pursuit;" they were "about the same business." What was the pursuit or business in question? It was the business of the master. The master, the employer, was a common carrier. It was transporting cargoes of freight from one port to another. That transportation involved docking at the terminals, loading the freight which constituted the cargo, and reloading with return cargo, if such was at hand for transportation, and, when it was loaded, the moving of the vessel away from the dock or wharf and putting it on its course for another port. The decedent was a member of the crew of the vessel lying at the dock. The unloading and loading of such a vessel and preparation for the voyage all involved the idea of doing the necessary work in an orderly way, promptly and expeditiously. Order and care in the handling and promptness in expedition are essential elements in successfully handling and carrying on the business of the common carrier. To meet these requirements the terminals were surrounded by a fence, and to the enclosure thus made access could be had by the gate referred to in the pleadings, at which a watchman had been placed, the duty of the latter being to protect the terminals from trespassers, guard the company's property, and "control the entrance and exit of the employees of the defendant." The exclusion of trespassers and the permitting of the employees to enter without unnecessary delay and in an orderly way gave to the person having charge of the gate through which the entrance of employees was effected the character of one participating in the common pursuit in which the defendant company was engaged. He was as much engaged in that common pursuit as were the employees who assisted in loading or in discharging the cargo of the ship lying at the dock; and a member of the crew, such as the decedent was, whose work was essential to the operation of the engine that moved the vessel, was also engaged in the common pursuit, and that made him and the watchman, who supervised and controlled the entrance to the terminals and to the vessel, fellow-

servants engaged in a common pursuit, the business of the employer.

In the case of *Davis* v. *Muscogee Mfg. Co.,* 106 *Ga.* 126 (32 S. E. 30), Davis alleged that he was in the employment of the defendant to clean and wash window-glass in the defendant's factory, and while he was so engaged the engineer or some other employee of the defendant operating the engine of the factory, without warning to the plaintiff and without his knowledge, turned on the steam from the engine or other appliance of the defendant so carelessly and negligently that the water and steam went outside of the factory to the window which plaintiff was washing, and thereby, without fault on his part, he was scalded and burned; and he sued for damages consequent upon the injuries received. It was held in that case that the plaintiff and the other employee of the defendant who operated the engine of the factory were fellow-servants, and that the petition stated no cause of action entitling the plaintiff to recover. It might appear at first glance that there was no connection between the plaintiff, engaged in merely washing the windows of the factory, and the engineer, who was probably in some remote part of the building. But when we consider it, we can see that the court properly held that they were about the same business. The work of each contributed to the efficient operation of the factory;—the clean windows letting in the light, and the engine moving the machinery. The performance of their work by each of these employees was essential to efficient work upon the part of other employees. The work of each was essential to the successful conduct of the whole work. It is not necessary that the employees, in order to be fellow-servants, must be of the same grade or in the same department. As was said by the Court of Appeals in the opinion rendered through Judge Bell in this case, the rule that in order for employees of a common master to be fellow-servants they must be employed in the same department of a business, known as the "departmental or conassociation doctrine," does not obtain in this State. To support this ruling Judge Bell cites the case of *Winn* v. *Fulton Bag & Cotton Mills,* 15 *Ga. App.* 33 (82 S. E. 586), and *Dwan* v. *Lumber Co.,* 15 *Ga. App.* 108 (82 S. E. 666). He also cites the case of *Georgia Coal &c. Co.* v. *Bradford,* 131 *Ga.* 289 (62 S. E. 193, 127 Am. St. R. 228). From the statement of facts reported in this last case it appears that Bradford brought

an action for damages alleged to have been sustained by him by reason of the negligence of the defendant's servants and agents, and obtained a verdict. A motion for a new trial having been refused, that ruling was brought to this court for review. The facts disclosed by the record were in part as follows: The defendant company was engaged in the operation of a furnace plant at Rising Fawn, Georgia, and desired to move a boiler from its plant there to be used at its coal mines, from ten to fourteen miles distant, in getting out coal for use in its locomotives and furnaces. The plaintiff was hired by the defendant, at a stated price per day, to furnish a team of mules and himself to assist other teamsters in hauling this boiler from the plant to the coal mines. He reported at the furnace plant on the morning he was to begin work, hitched his mules, threw his "stretchers" across his shoulders, and started with them to the place where the wagon on which the boiler was to be hauled was standing. A railroad track ran through the yards of the furnace plant of the defendant company, passing between the point at which the plaintiff hitched his mules and the place where the wagon was, which track was used by the defendant company in connection with its furnace plant. As the plaintiff was walking over a crossing leading across this track to the defendant's furnace, carrying the "stretchers" to the wagon, he was struck and thrown from the track by the rear end of an engine used in hauling products from the furnace, which was then backing along the track on its way to a water-tank, sustaining the injuries for which he brought suit. He alleged that he was not guilty of any negligence, but that his injuries were occasioned solely by the negligence of the servants of the defendant who were operating the engine which struck him.

In that case it became necessary to decide whether the relation of fellow-servants existed between the plaintiff and the members of the crew of the engine to whose negligence plaintiff attributed the injuries which he received. In discussing that question this court, speaking through Mr. Justice Holden, said: "Some authorities have entertained the view that considerations of public policy give rise to the exemption of the master from responsibility for the negligent acts of a fellow-servant, on the idea that to hold the servants alone responsible to each other tends to promote regard and caution for the welfare of each other, thereby enhancing the

general character of the service and the consequent good of all concerned. ·Others have reasoned that the master should not be held to liability, because the servants, coming into contact with each other, were in a better situation to become acquainted with the habits and methods of their fellow-workmen, to note their exercise of care, or want of it, and were thus better able to guard themselves, than the master was to protect them, against the perils arising from the negligence of each other. These views have originated what is known as the 'conassociation or departmental rule,' whereby those engaged in separate departments of the work of a common master are not regarded as fellow-servants. Were either of these views applied in this State, we would have no hesitancy in holding that Bradford was not a fellow-servant with those engaged in running the engine which struck him. Manifestly he was in no position to control the movements of the engineer or fireman. His employment by the defendant company only began the morning of his injury, and he had just appeared on the premises of the company as its servant. It does not appear from the record that he and the engine crew were even acquainted with each other, or that either knew that the other was employed by the common master. Nor does it appear that the removal of the boiler and the running of the engine were so connected that those engaged in the one work knew, or were chargeable with knowledge, of the movements of those engaged in the other, or that there was any association or concert of action between them at the time of the injury. As we have stated, in those jurisdictions where the 'departmental or conassociation rule' has been adopted, the rule seeks to be founded on the idea that the master is freed from liability to the servant for injuries occasioned by the negligent acts of another servant in cases where the servants are engaged in identically the same labor, or in the same department of work, at the time of the injury; or their duties are such that they are thrown together and have the opportunity of observing the habits and methods of work of other servants, and thereby occupy a better position than the master with respect to guarding against the consequences of negligence. But this is not the view adopted by many of the leading text-writers and supported by the best considered decisions; nor does such view obtain in this State."

See also *Brush Electric Light Co.* v. *Wells,* 110 *Ga.* 192 (35 S.

E. 365), and the cases there cited. Other cases from the Georgia decisions supporting the doctrine laid down might be cited. The question dealt with in this case is elaborately discussed in 4 Labatt's Master and Servant (2d ed.), 4060 et seq. And there, in addition to the discussion contained in the text, will be found innumerable cases bearing upon the subject.

Having decided that the decedent and the watchman, whose misconduct in assaulting the decedent resulted in the death of the latter, were fellow-servants, it is unnecessary to discuss any other question involved; for they being fellow-servants, the master was not liable in damages for the misconduct upon the part of the one that resulted in the death of the other in a suit of this character; and it is conceded that the plaintiff could not maintain a suit for damages in the city court of Savannah falling within the provisions of the Georgia workmen's compensation act, this being the act to prevent industrial accidents, to establish rates of compensation in cases of death, etc., approved August 17, 1920 (Georgia Laws 1920, p. 167).

*Judgment affirmed. Russell, C. J., and Hines, J., dissent. The other Justices concur.*

HINES, J. 1. In this State, "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." Civil Code (1910), § 3129. Were the decedent and the employee who killed him fellow-servants of the defendant company at the time this tragedy occurred? The answer to this question depends upon whether the deceased, at the time he was injured, was in the service of the defendant, and whether both "were about the same business" of the defendant. If the servant inflicting the injury was in the service of the defendant at the time the injury was inflicted, and the decedent was not in the service of the company at that time, then the fellow-servant rule has no application to this case. That rule is as follows: A master who has exercised the necessary degree of care in performing the non-delegable duties owed by him to his employees is not answerable to one of them for an injury which is the result of the negligence of others in the same service. *Shields* v. *Yonge,* 15 *Ga.* 349 (60 Am. D. 698). They need not work side by side. *Brush Electric Light &c. Co.* v. *Wells,* 110 *Ga.* 192 (supra). It has been said that servants em-

ployed in separate departments of the master's business come within the fellow-servant rule. *Georgia Coal & Iron Co.* v. *Bradford,* 131 *Ga.* 289 (supra). Conceding that the oiler of a ship, employed in the business of a steamship company which is engaged in the business of a common carrier of goods, and the keeper of the gates of the terminals of such company, through which employees enter to reach the ship at its dock, were generally fellow-servants of the owner of the ship, this fact alone would not relieve the master from liability under the facts alleged in the petition in this case, unless the injured servant at the time of the injury was actually or constructively engaged in rendering service to the master in and about the same business in which both servants were employed. If at the time of this injury the gate-keeper was acting within the scope of his employment, but the servant injured was not so employed, then the rule of fellow-servants would not apply. In fact the master in such circumstances would not be liable at all to the injured person on the theory that the relation of master and servant existed. An employee can never recover from the master for an injury inflicted by another servant when at the time of the infliction of the injury he was not serving his master. In other words, the master does not owe to the servant protection against injury when the servant, although employed by the master, is not rendering the master service. A master's duty to protect his servant continues only so long as the latter may be said to be actually or constructively in the master's employment and under the master's control. This duty is not necessarily confined to the precise period during which the services are actually rendered. The relation exists when the servant is on the master's premises in anticipation of his work, although the actual time of taking up or beginning his work has not arrived. This is not so where the servant is on the premises unreasonably early or contrary to custom. The duty of the master to protect the servant also arises when the servant is on his way to employment and is at the time under the control of the master. This duty likewise arises during the servant's carriage to and from his work by the master, by consent, custom, or contract. The relation likewise continues during the servant's progress to or from his place of work along a way or path over the master's premises which he and other employees are accustomed to use. 39 C. J. 397; *Southern Railway Co.* v. *West,*

4 *Ga. App.* 672 (62 S. E. 141) ; *Self* v. *Adel Lumber Co.*, 5 *Ga. App.* 846 (62 S. E. 112). Mere incidental interruptions do not suspend the relation between master and servant. Neither the period nor continuity of service is changed by an incidental suspension from work, or by a brief incidental absence from the scene of the work. Thus the relation continues when the servant has left his place of work merely to obtain a drink of water or of milk. So it is not interrupted by an intermission for dinner. So the relationship continues and the duty of the master to protect the servant exists for a reasonable time after the work has ceased, for purposes incidental to the employment, as where the servant was washing and changing his clothing preparatory to going home, or where he was getting his dinner-pail, or where he was going to procure tools. Triangle Lumber Co. *v.* Acree, 112 Ark. 534 (166 S. W. 958, Ann. Cas. 1916B, 773) ; Birmingham Rolling Mill Co. *v.* Rockhold, 143 Ala. 115 (42 So. 96) ; Woodward Iron Co. *v.* Curl, 153 Ala. 215 (44 So. 969) ; Sloss-Sheffield &c. Co. *v.* Moore, 6 Ala. App. 317 (59 So. 311) ; Ingram *v.* Rutland R. Co., 89 Vt. 278, 95 Atl. 544, Ann. Cas. 1918A, 1191) ; Heldmaier *v.* Cobbs, 195 Ill. 172 (62 N. E. 853) ; Connell *v.* N. Y. C. &c. R. Co., 213 N. Y. 352 (107 N. E. 568) ; Evansville &c. R. Co. *v.* Maddux, 134 Ind. 571 (33 N. E. 345; 34 N. E. 511) ; Cleveland &c. Co. *v.* Martin (Ind. App.), 39 N. E. 759; Callahan *v.* New England Telegraph &c. Co., 216 Mass. 334 (103 N. E. 922) ; Broderick *v.* Detroit Union R. Station, 56 Mich. 261 (22 N. W. 802, 56 Am. R. 382) ; Moore *v.* Minneapolis &c. R. Co., 123 Minn. 191 (142 N. W. 152, 143 N. W. 326) ; Jackson *v.* Butler, 249 Mo. 372 (155 S. W. 1071) ; Neice *v.* Farmers' Co-Op. Creamery &c. Co., 90 Neb. 470 (133 N. W. 878) ; St. Louis &c. Ry. Co. *v.* Davis (Tex. Civ. App.), 262 S. W. 923; Easter *v.* Virginian Ry. Co., 76 W. Va. 383 (86 S. E. 37) ; Taylor *v.* Bush &c. Co., 6 Pennewill (22 Del.), 306 (66 Atl. 884, 12 L. R. A. (N. S.) 853) ; Salabrin *v.* Ann Arbor R. Co., 194 Mich. 458 (160 N. W. 552) ; Helmke *v.* Thilmany, 107 Wis. 216 (83 N. W. 360). It is true that going to and from work is an incident to the employment of a servant. In re Sundine, 218 Mass. 1 (105 N. E. 433, L. R. A. 1916A, 318) ; In re Stacy, 225 Mass. 174 (114 N. E. 206) ; Western Coal & Mining Co. *v.* Industrial Commission, 296 Ill. 408 (129 N. E. 779). The employment of the servant contemplates his entry upon and departure from the premises as

much as it contemplates his working there, and .must include a reasonable interval of time for that purpose. Cudahy Co. v. Parramore, 263 U. S. 418 (44 Sup. Ct. 153, 68 L. ed. 366, 30 A. L. R. 532). But this principle applies only when the servant is on the premises of the master, or on approaches thereto, or is being transported to the premises by the master. Moreover, an interruption prompted solely for the employee's convenience, advantage, or pleasure, will suspend the relation. Gooch v. Citizens Electric St. Ry. Co., 202 Mass. 254 (88 N. E. 591, 23 L. R. A. (N. S.) 960). So the relation does not continue when the servant leaves the premises for luncheon at a place of his own selection. Moronen v. McDonnell, 177 Mich. 691 (143 N. W. 8). So the relation does not continue when the servant is on his way in disobedience of orders. Gardstrom v. White Lumber Co., 21 Cal. App. 744 (132 Pac. 842). Nor does it exist where the servant has left the premises during the noon hour on business of his own. Ellsworth v. Metheney, 104 Fed. 119 (44 C. C. A. 484, 51 L. R. A. 389). So it has been held that an employee who, during the luncheon hour, took an elevator to deliver a Christmas present, was not, at the time of the accident then occurring, in the employment or service of the employer. Ross v. John Hancock Mutual Life Insurance Co., 222 Mass. 560 (111 N. E. 390). So where the injury occurred during the suspension of the employment of the injured servant in an interim of time for the purpose of noon rest, in which the plaintiff was not under the control of the master, and the trip during which the servant was injured must be assumed to have been a temporary stepping aside on the part of the servant in the employment of the master for the purpose of pursuing his own affairs. *Hicks* v. *A. C. L. R. Co.,* 17 *Ga. App.* 69 (86 S. E. 250). It has been held that where an employee in a planing mill is injured while operating, for his own purposes, a machine which does not constitute a part of the machinery of the mill, but is under the control and subject to the use of a third person who merely gets power from the mill, the proprietor of the mill is not liable for damages accruing from such injuries. Gross v. Fischer Lumber & Mfg. Co., 119 La. 201 (43 So. 1006). So where an employee who for his own purpose attempts to make use of a machine in the shop in which he was working, which it is not a

part of his duty to use, assumes the risk of such action. Stodden *v.* Anderson & Winter Mfg. Co., 138 Iowa, 398 (116 N. W. 116, 16 L. R. A. (N. S.) 614). So it has been held that a servant nineteen years old, who was injured by the negligent starting of certain negligently unguarded machinery by a boy employed under the statutory age, while he, having left his place of employment, was talking with another workman, can not recover under any theory of the master's liability, if he was not about the master's business at the time. Schmnoske *v.* Asphalt Roofing Co., 129 App. Div. 500 (114 N. Y. Supp. 87). Also it has been held that the master was under no obligation to watch over and guard the servant employed as night watchman, as he was leaving the premises to go to a nearby restaurant. Wilson *v.* C. & O. R. Co., 130 Ky. 182 (113 S. W. 101). If the servant step aside from the business of his master for never so short a time to do any act that is not a part of that business, the relation of master and servant is for the time suspended, and the acts of the servant during this interval are not his master's but his own. *Neff* v. *Broom,* 70 *Ga.* 256; *Georgia R. Co.* v. *Wood,* 94 *Ga.* 124 (21 S. E. 288, 47 Am. St. R. 146); St. Louis Southwestern Ry. Co. *v.* Harvey, 144 Fed. 806 (75 C. C. A. 536). When a dredge employee was drowned on returning from a trip ashore on his own business, it was held that "The controlling fact is that he had been ashore solely for purposes of his own, and lost his life before he returned to his place of employment or to the premises of his employer, and before he had gained access to the boat which was to carry him from the dock to the barge;" and that the accident did not arise out of and in the course of his employment. Berg *v.* Great Lakes D. & D. Co., 173 App. Div. 82 (158 N. Y. Supp. 718); 1 Schneider on Workmen's Compensation Law, 560, 561, § 270. In such circumstances, the fact that the servant is in the general employment of the master is not sufficient to make the relation of master and servant exist, and to make the master liable to his servant for injuries sustained while he is so not about the business of the master. In such a situation, if the servant, although in the general employment of the master, is injured by a fellow-servant who is about his master's business, the relation between the latter and the injured servant is not that of fellow-servant; and if the master is otherwise liable to the servant for his injury, the master can not escape liability upon the theory that the injured person was

a fellow-servant of the servant inflicting the injury. The deceased was in the employment of the defendant company as an oiler. His duty to his master was to keep oiled the machinery of the ship on which he worked. This was the business of the master in which he was employed. This service was to be rendered by him on shipboard, and not elsewhere. He was not engaged in this work at the time he was killed. He was on shore-leave. So this absence was for his own convenience, pleasure, or business. He had not returned to the ship, and had not even reached the wharf premises of his master. It is true that he was on his way back to the ship when he was injured; but he had not reached and was not on the premises of the master. It is true that he had reached the gate through which employees and others entered the wharf premises of the company to reach the ship; but he had not entered. He was still in the street. He was still on leave. In these circumstances he was not killed while about his master's work. It follows that at that time he was not a fellow-servant of the employee of the company so inflicting the fatal wound from which he died. Ergo, if the master is otherwise liable he can not escape liability under the fellow-servant rule.

2. Before the plaintiff in this case could recover for the death of her son under the Georgia workmen's compensation law, the accident which resulted in the death of her son must have arisen out of and in the course of the employment. *Georgia Casualty Co. v. Martin,* 157 *Ga.* 909 (122 S. E. 881) ; *Georgia Railway &c. Co. v. Clore,* 34 *Ga. App.* 409 (129 S. E. 799) ; 1 Bradbury's Workmen's Compensation, 398.

3. If the deceased and the servant who inflicted upon him the fatal blow from which he died were not fellow-servants, and if the plaintiff could not recover compensation for the death of her deceased son under our workmen's compensation act, was she without remedy? If the deceased and the servant of the defendant who killed him were not fellow-servants, and if the deceased, at the time he received the fatal blow which killed him, was not about his master's business, then he was substantially a stranger to the defendant, and was entitled to all the rights he would have as such stranger. His mother could recover from the defendant damages for his homicide on this theory, under the facts alleged in her petition. *Ellsworth v. Metheney,* supra; *Smith v. Humphreyville,* 42

Texas Civ. App. 140 (104 S. W. 495) ; M., K. & T. Ry. Co. v. Hendricks, 49 Tex. Civ App. 314 (108 S. W. 745). The servant does not assume the risk of injuries from coemployees who are not fellow-servants. *Ga. R. & B. Co.* v. *Rhodes,* 56 *Ga.* 645 (2) ; *Central of Georgia Ry. Co.* v. *Allen,* 140 *Ga.* 333, 335 (78 S. E. 1052) ; 39 C. J. 544, § 646 (3). Every person is liable for torts committed by his servant within the prosecution and within the scope of his business, whether the same be by negligence or voluntarily. Civil Code (1910), § 4413. The master is liable for the willful torts of the servant, just as though he had himself committed them. *Central of Georgia Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989, 84 Am. St. R. 250). The master is liable for a reckless homicide committed by his servant, in the prosecution of the master's business, and within the scope of the servant's employment. *Rome Railroad Co.* v. *Barnett,* 94 *Ga.* 446 (20 S. E. 355) ; Civil Code (1910), § 4424 et seq.

4. Furthermore, it would seem that the servant in this case, who killed the deceased, occupied a position more than that of a mere servant. According to the allegations of the petition, the duty of this watchman was "to supervise and control the entrance and exit of the employees of the defendant." It is not the grade, title, or position in the service that determines whether the person is a fellow-servant or vice-principal of the master, but it is the duty which the servant performs towards the other servants. Mere supervision and nothing more by one of a number of servants over the work in which they are engaged will not necessarily make an employee a vice-master. Supervision, coupled with the discharge of other duties in connection therewith, may have this effect. Among the non-assignable duties of the master are, providing machinery and appliances, the selection and retention of servants, the establishment of proper rules and regulations, and the instruction of servants. This enumeration, however, is not exhaustive. It simply illustrates who are vice-principals. *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609 (56 S. E. 839, 10 L. R. A. (N. S.) 772). The watchman in this case determined to a large extent who should be permitted or who should be refused entrance into the premises of the master. One who is clothed by the master with the power to prevent or admit persons from entering the premises of the master is a quasi-master. This is especially so in cases of large corpora-

tions. "A corporation acts only through its agents, and unless responsible for their acts is wholly irresponsible. The agent who represents the corporation as master over other employees for the time occupies the position of the corporation for such time as to such subordinates." *Atlanta Cotton Factory Co.* v. *Speer,* 69 *Ga.* 137 (47 Am. R. 750); *Bain* v. *Athens Foundry &c. Works,* 75 *Ga.* 718. The case in hand is similar to one in which the servant has the power to hire and discharge other servants, and who also exersises general superintendence over the servants engaged in the business. *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 726 (19 S. E. 33, 44 Am. St. R. 113); *Taylor* v. *Georgia Marble Co.,* 99 *Ga.* 512 (27 S. E. 768, 59 Am. St. R. 238); *Woodson* v. *Johnston,* 109 *Ga.* 454 (34 S. E. 587).

It follows that, for the reasons above stated, I am unable to agree with the majority in the opinion rendered in this case. RUSSELL, C. J., concurs in this dissent.